*10 The opinion of the court was delivered by
Hobnblower, C. J.
The only question in this case, is whether the act respecting joint-tenants and tenants in common, passed the fourth February 1812, (Rev. laws, 556.) is to have any influence on conveyances made, or estates created prior to that period.
The act is as follows; “ That no estate after the passing of this act, shall in this state be considered and adjudged to be an estate in joint-tenancy, except it be expressly set forth in the grant or devise creating such estate, that it is the intention of the parties to create an estate in joint-tenancy, and not an estate of tenancy in common, any law usages or decision heretofore made to the contrary, notwithstanding.”
Andrew Bell by deed bearing date the eleventh May 1804, conveyed a tract of land to Jacob Berdan (the father of the lessor of the plaintiff) and Uriah Van Riper (the defendant in this suit,) by such words as at the common law, vested in them an estate in joint-tenancy. Nothing was done in the life-time of Jacob Berdan, to put an end to that estate. He died in the year 1826, having made his will and thereby devised one moiety of the land to his son the lessor of the plaintiff, to recover which, this action was brought. On the trial of the cause before Mr. Justice Ryerson, at the Bergen Circuit in March 1835, the defendant’s counsel insisted that the rights of the parties were not affected by the act of 1812, and called upon the court so to instruct the jury; but the judge reserved the point for the consideration of the court at bar; and the jury having rendered a verdict for the plaintiff, a rule was entered calling on him to shew, cause, why that verdict should not be set aside, and a new trial granted.
If the act of 1812 was intended and must be construed by us, to have a retrospective operation, it is one of those statutes which Judge Paterson in Calder & ux. v. Bull & ux: (3 Dall. 397,) emphatically condemns, as contrary to sound legislation and the fundamental principles of the social compact. Nevertheless, if the legislature has spoken in language plainly and unequivocally indicating their intention to convert estates in joint-tenancy created prior to 1812, into tenancies in common, we are not at liberty to disregard that intention, unless it manifestly violates *11 the salutary provision in the constitution of the United States, which prohibits the states from passing any law “ impairing the ob'igation of contracts.” That instrument does not prohibit the states from passing retrospective laws generally, but only ex post facto laws, or such as subject a party to punishment or forfeiture for an act antecedently done, and which when done was not punishable at all, or not in the maimer or to the extent prescribed. Watson v. Mercer, 8 Peters U. S. R. 88 : and in the same case, it was decided that the Supreme Court of the United States had no right to pronounce an act of a state legislature, void, as contrary to the constitution of the United States from the mere fact, that it devested antecedent vested rights of property. Uor is there any provision in the constitution of this state, nor any adjudication of this court, denying to our legislature, the right to enact retrospective laws of any kind, or laws altering or divesting previously existing and vested rights. See also Salterlee v. Matthewson 2 Pet. R. 380.
It only remains then to enquire: 1st Whether the act of 1812 now under consideration, if retrospective in its terms, does “ impair the obligation ” of an antecedently existing contract, and 2dly. Whether by any sound or imperative rule of construction, we are required to give to this statute, a retrospective operation ?
1st. In Green vs. Biddle, 8 Wheat. R. 84, the Supreme Court of the United States, say: “the objection to a law on the ground of its impairing the obligation of a contract, can never depend upon the extent of the change which the law effects in it. Any deviation from its terms, by postponing or accelerating the period of performance which it prescribes; imposing conditions not expressed in the contract; or dispensing with the performance of those which are, however riiinute or apparently immaterial in their effect upon the contract of the parties, impairs its obligation.” And I think, it may be safely added, that any law which changes the influence and legal effect of an existing contract, as between the original parties thereto, or as between parties claiming under it, giving to one a greater and to the other a less interest or benefit in the subject matter of the contract, than by its terms or its legal operation they would be entitled to, is a law “impairing” its “obligation” within the meaning of the Consti *12 tution. Apply these principles to the case before us, and if the act in question is retrospective, it seems to me to be directly in conflict with that provision in our national charter, which prohibits any legislative violation of contract.
The rights of the parties in this suit, depend upon a contract made and entered into, prior to the year 1812; by and between Andrew Bell of the one part, and Jacob Berdan (the father of the lessor of the plaintiff) and Van Riper the defendant, of the other part. By the terms of that contract, Berdan and Van Riper became seized of, and entitled to an estate in joint-tenancy. When the deed was made in 1804, the terms, in which it was written, created a joint-tenancy just as distinctly and strictly as a deed now made, expressly declaring the intention of the grantor to make such an estate, would do it. If the parties intended that Mr. Bell should convey to them, and that they should take the lands in joint-tenancy and in no other way, they used the very form of words, to express their meaning, and create such an estate. If such was their intention, (and we are bound to presume it was) then until the parties chose to modify or put an end to their own contract, in such way as they lawfully might, they were bound by it. If one joint-tenant was aged and infirm and the other had youth and health on his side, he had a vested right in the chance of survivorship, and the beneficial interest incident to such an event; a right that could only be defeated by his own act, or by the act of his co-tenant in his life-time. The probability of surviving the other tenant, arising from disparity of age and other circumstances, may have been the moving consideration with the defendant, Van Riper, for becoming a joint- purchaser, or with the donor, for making a joint conveyance.
The defendant in this case has survived his joint-tenant and he claims the benefit of his contract: he sets up a title to the whole of the premises by the very terms of that contract: and how does the plaintiff answer this claim ? Hot by denying the defendant’s title under the deed; the written contract of the parties; but by asserting that the legislature have passed an act altering the force and effect of the deed : changing the rights of the parties under it, and converting what was an estate in joint-tenancy, into another and different estate. He admits that under the deed, *13 the defendant has title to the whole, but insists that in virtue of the statute, he has title to but one moiety of the premises. Which shall prevail? The deed, or the statute; the contract of the parties, or the authority of the legislature? The constitution of the U. S. or the enactments of our general assembly ?
The learned counsel for the plaintiff, considered this a remedial statute, and urged upon us, that remedial and mitigating statutes' might be retrospective and yet valid. This is cheerfully conceded in all cases, where such remedy or mitigation is not in violation of existing contracts. But if the deed under which the defendant claims, is not a contract within the meaning of the constitution :£ the U. S. — I do not know what is. Again: it was contended, that as either of the grantees might by his own act, have severed the joint-tenancy; andas the legislature might provide for, and even enable one joint-tenant to compel the other into a partition, without any infraction of constitutional law, therefore they might with the same propriety, effect a severance of the estate at once by a positive enactment. But I do not think so. I may cancel my bond and release my debtor from its obligation ; hut the legislature cannot therefore declare it null and void; or good only for half the amount due upon it. So the legislature may by statutory regulations, enable one partner to compel his associate in trade, to settle up the concern and put an end to the co-partnership; but it cannot alter the terms of the partnership or change the rights and interests of the parties in the assets of the firm.
The attention of the court was also directed by counsel to the act of 1784 (Pat. Rev. 53) to pass estates in fee, by certain devices, and to limit estates tail. Whatever embarrassments the retrospective provisions of that act might have thrown around this subject, if it had been of more modern date, they are obviated by the simple fact, that, that act was passed and in full force, before the federal constitution was adopted. Besides [without however expressing any opinion on the subject] there may be a class of cases, of a conventional character, in which the rights of individuals may come so directly and injuriously into conflict with the public welfare, or be so at variance with the genius of our government, as to j ustify legislative interference to alter or suppress them. Contracts against which there may be no existing-specific prohi *14 bition, but by which, perpetuities may be created injurious in their effects to the free institutions of our country; or nuisances be erected and continued, dangerous to the health or the safety of the public; or by which, certain trades or manufactories may be ■established and carried on, prejudicial to the commonwealth. [Iredell Just. in Calden vs. Bull 3 Dall. 400.] Whether in all such or similar cases, state legislation may not interfere to modify, or regulate, or to even abolish the evil, notwithstanding private contracts may thereby be affected, without violating constitutional principles, is a question not involved in the case before us. Whether men are joint-tenants or tenants in comrnou, is a matter of total indifference to the public, and therefore any statute changing an estate of joint-tenancy created by the parties, into a tenancy in common, or the latter into the former, is as much a statute impairing the obligation of contracts, as a law would be, that should release my obligor from the payment of his bond. I am therefore of the opinion that, the act in question, if retrospective in its terms, is so far as it is retrospective, inoperative and void. But,
2dly. Whenever a statute is susceptible, without doing violence to its terms, or subverting some established rule of construction, as being understood either as exclusively prospective, oras both prospective and retrospective in its enactments, courts of justice will always adopt the former construction, especially if a retrospective operation would work injustice to any one.
To give this statute the effect contended for by the defendant, we have only to read it as if the word “ created ” was understood, after the word “ estate,” in the first line. It would then be “ that no estate created after the passing of this act,” etc. This would give it an exclusively prospective and future operation. But to defeat this construction, we are told, that the words, “after the passing of this act,” refer to the judgment or consideration of the court, and not to the creation of the estate: So that the legislature must be understood as saying, “ that after the passing of that act, no estate, whenever the same might have been created, should be considered and adjudged a joint-tenancy, except, &c. If we do not regard the punctuation, as we find it in the printed statute book (and I admit that very little reliance is to be placed upon it) we may pretty fairly read the act in that sense. But *15 then we must transfer the comma from where we now find it, alter the word “ act,” and place it immediately after the word “ estate,” so as to read “ that no estate, after the passing of this act shall be adjudged &c.” — and even then to carry out the retrospective intention of the legislature, if we would suppose them to use appropriate language, we must read the rest of the statute with several verbal alterations; thus doing violence to the text, not to give it a more benign effect, but a very questionable and odious construction. The language of the act, as it stands in the statute book, is I think, in its grammatical sense, evidently prospective. The words “ creating such estate ” in connection with the words, “ that it is the intention of the parties to create, &o. shews that the whole section has a future bearing and aspect, and will not justly admit of a retroactive construction. “Words in a statute,” says Mr. Justice Paterson, in the U. S. vs. Heth, 3 Cranch 413,” ought not to have a retrospective operation, unless they are so clear, strong and imperative, that no other meaning can be annexed to them; or unless the intention of the legislature, cannot be otherwise satisfied. This rule “he adds” ought especially to be adhered to, when such a construction will alter the pre-existing situation of parties, or will affect or interfere with their antecedent rights.” Applying this rule to the case before us, loads me inevitably to the conclusion that the act in question, was entirely prospective; and in so understanding it, 1 impute to the legislature, no intention at variance with any of the sound and moral principles of law; coming into no conflict with any vested rights, and involving no question of doubtful expediency, or legitimate constitutional legislation.
I have already extended my remarks further than I intended and certainly beyond what was necessary; but I cannot refrain from adding one other consideration peculiar to this case, that inclines me strongly to resist the plaintiff’s construction. If that be correct, then those who have taken conveyances prior to 1812, in the common law form, are not now and cannot be joint-tenants, though it was always their intention to be such, and may be their desire to remain so. They can have no election; while those who have taken conveyances since 1812, and those who may hereafter purchase, may, by conforming to the statute, become joint-tenants, and continue such if they choose to do so. Nothing *16 less than a plain, unequivocal .enactment, if there was no other difficulty in the case, would in my opinion justify the court, in adopting a construction so unreasonable, not to say unjust.
Let. the verdict be set aside and a new trial be granted.
Eobd and Ryerson, Justices, concurred.
Cited in Den James v. Dubois, 1 Harr. 292.