CITIZENS' GAS LIGHT COMPANY AND CITY OF NEWARK, PLAINTIFFS IN ERROR, v. STATE, REBECCA R. ALDEN, PROSECUTORS, DEFENDANT IN ERROR.

1. A record removed into the Supreme Court by *certiorari* remains there, in legal contemplation until remitted by order of the court.
2. While it remains in court, a second writ of *certiorari* may issue, to bring in new parties, and errors may be assigned upon the record in court.
3. Where interested parties are not before the court, it is proper practice to hold the proceeding until they are brought in, but judgment pronounced as to those in court, is no bar to an adjudication upon the same matter between new parties.
4. Sale for taxes in the city of Newark set aside for defective notice under the charter to delinquents, affirmed.
5. Supplement to act concerning taxes (April 9th, 1875,) held to be prospective only.

On error to Supreme Court. See *State, Alden, pros.,* v. *Mayor of Newark,* 7 *Vroom* 288.

For the plaintiffs in error, *T. N. McCarter.*

For the defendant in error, *Cortlandt & R. Wayne Parker.*

The opinion of the court was delivered by

KNAPP, J. The first error assigned is upon the refusal of the Supreme Court to dismiss the writ of *certiorari* by which the Citizens' Gas Light Company was drawn into the litigation, because that writ brought up no record to be reviewed. A writ of *certiorari* at the instance of the prosecutrix, and in her aid, in an action involving title to lands, had gone to the corporate authorities of the city of Newark, directing proceedings touching a tax sale of the lands in suit, to be certified to the court for its judgment. The city returned the record and proceedings into the Supreme Court. One David H. Tichenor, to whom a declaration of sale had been made, and who had conveyed the land, was admitted to defend the city's sale. The parties then before the court were heard, and

judgment was pronounced invalidating the sale. It became necessary to bring in the gas light company, that it might be heard in defence of this source of its title, and to bind it by the adjudication sought for. To effect this, the new writ was issued, directed to the city as well as the company, because it claimed rights under the controverted proceedings. It was served upon both the plaintiffs in error, and the city made return that the record under the mandate of the former writ, had been sent into the court and there remained. Doubtless, the first writ removed the record, and as no order remitting it had been made, it remained, in legal contemplation, in the court to which it was certified. *Welsh* v. *Brown*, 13 *Vroom* 323.

The return made by the city to the second writ was the truthful, therefore the proper one. There was no record to be certified under it. The gas light company was custodian of no record, and it was at liberty to make such return as it might be advised and was permitted to make. It may be conceded that the second *certiorari* was, so far as it affected the record, a nullity. But it does not follow that the court below should have refused to hear the parties when brought before it. The error of the plaintiffs' position is in regarding the litigation between these parties, as disconnected with the record already in court. There was but one record, and that was spread before the court. Upon that errors were assigned, and its inspection for errors was within its power and became its duty.

In *certiorari*, as in other proceedings on error, two things are essential to call in action the revising power of the court. One is to draw in the record, the other to bring the parties to be affected by the review. The former is accomplished by the command of the writ upon the custodian of the required proceedings to certify them to the court. On the return and upon errors assigned, the party interested in defending them, should have adequate notice to appear.

A review of the early practice in England in writs of error is given by Mr. Justice Depue in *Welsh* v. *Brown*, 13 *Vroom* 323.

The course there, after return of the writ and errors assigned, was to issue a writ of *scire facias ad audiendum errores* to bring in defendants. This writ failing to issue, the proceeding discontinued. But the record being in court, the plaintiffs might still have errors reviewed by suing out another writ of error upon the record before the court, in which writ the command to certify was omitted. In such cases in the King's Bench, it seems to have been the practice to bring in defendants by ordinary process. Discontinuance of the first writ was saved by the defendant appearing *gratis*, and pleading to the assignment of error. Such appearances became common in practice, and the *scire facias* fell into disuse. In Parliament *scire facias* sometimes was used, but it became the common course there for the defendants to appear voluntarily upon the order of the house on motion of a peer. *Bac. Ab.*, *"Error," F;* 2 *Tidd's Prac.* 1143. *Scire facias* was also used to bring in those not parties to the record, who were interested in the question, as terre-tenants in error brought to reverse common recoveries, or attainder of felony of those who had lands.

It was granted as well after judgment in error, as before when restitution had not been awarded. Appearances here are voluntarily effected under regulations of the court. In *certiorari* the mode of bringing in the defendant has not been uniform. He is sometimes named in the writ with that of the custodian of the record, who may or may not be a proper party defendant, or his name is endorsed on it. Service of a copy of the writ in such case has been regarded as authority to appear in the suit without other leave. Parties showing an interest in the litigation who are not named in the proceeding are admitted upon motion, and often notice is given interested parties without service of the writ. I see no reason why they may not be required to appear by rule of court. When the record is in court, the writ is properly sued out to give the court jurisdiction to proceed in the litigation and to bring in the parties who are entitled to be heard, and who are sought to be bound by its judgment. Such was its effect in

this case, and it was properly retained, unless the second ground of error is meritorious, viz., that the court under the first writ of *certiorari*, having pronounced its judgment between the parties then before the court upon the same subject of controversy, had exhausted its power over that subject, and thereafter its jurisdiction to hear other parties upon the same questions was ended, and it could not as between the prosecutor and a new party proceed to judgment. It is said the matter is *res adjudicata.*

Cases were cited by counsel, in which the Supreme Court had refused to hear a second time matters which the same parties had already litigated under *certiorari* proceedings. *State* v. *Jersey City,* 1 *Vroom* 247; *State* v. *Nerney,* 5 *Dutcher* 189; *Barnes* v. *Gibbs,* 2 *Vroom* 318.

But the record of the judgment which the defendant in error, who raises this objection, claims to be conclusive, does not show the gas light company to have been a party. A matter is *res adjudicata* when these several conditions concur : identity of the thing in controversy; of the cause of action; of the persons and parties to the action; and of the quality or character in the persons for or against whom the claim is made. This wants the essential of identity of parties.

The doctrine does not rest upon the idea that the court's power is spent in the former proceeding. It is pleadable in bar of the action, not to the jurisdiction of the court. Its ground is, that the parties are estopped by the record from again litigating matters already judicially determined. If the estoppel be not pleaded or brought before the court, there may be another judgment.

In *State* v. *Jersey City, supra,* the court was informed of its former judgment, which concluded those parties by the return made by a defendant. As estoppels are mutual, binding the parties and privies, there is no estoppel here which the gas light company could plead, unless by privity with a defendant in that procedure; it as well as the prosecutrix was concluded by that judgment. This, it is presumed, the company would not assent to.

Since the act of April 2d, 1869, was passed, remitting parties to the Supreme Court to test directly the validity of proceedings upon which deeds, declarations of sales and conveyances are founded, in aid of actions touching the title to lands, it became necessary for the Supreme Court to so mould and regulate the uses of the writ of *certiorari* as to meet the design of the legislature, and secure the hearing of parties.

Where a municipality, whose proceedings are attacked under a writ issued in aid of ejectment, stands as the only party in the writ, and it appears to the court that there are others in interest to be affected by the controversy, they will not proceed in it until such others are brought in, (*Fleischauer* v. *West Hoboken,* 10 *Vroom* 421,) and that upon principles of justice so obvious as to underlie all rational systems of law. No one can be bound without first being heard. The act referred to was not intended to change the rights of parties in such *real* litigations, but simply to turn this branch of the inquiry over to a forum different from that taking cognizance of the main controversy. It is the duty of the court in the preservation of such rights, to see that the true parties to the main litigation are permitted to be brought into court, both to be heard and to be bound. The second writ was issued with that design, and I think it was properly issued, and that the court below rightfully proceeded upon it. As to the merits of the controversy, I assent to the conclusions of the Supreme Court, that the notice to delinquent tax-payers was not in compliance with the requirements of the provisions of the city charter of Newark, and was, under recognized adjudications, adequate ground for setting aside the proceedings of sale. I deem it unnecessary to add anything to the reasons or citations of authorities in support of it given by Justice Van Syckel (7 *Vroom* 288) and those contained in the opinion of Justice Scudder in this case. The ground, however, I am compelled to say, seems to me to be on the border line between shadow and substance, and my assent to it is yielded in bowed submission to the rule *stare decisis.*

I agree with the judgment of the Supreme Court as to the

effect of the act of April 8th, 1875, entitled a further supplement to an act concerning taxes, (*Rev.*, *p.* 1166,) which provides, " that in all cases where public notice for a specified time is required by law to be given before proceedings are had for the public sale of lands for unpaid taxes, no certificate of sale or tax title shall be set aside and holden for nought by reason of any variance between the date of such notice and the actual publication thereof; provided that notice shall have been or shall be actually given for the specified number of days prior to such proceedings for public sale." The words of the act doubtless make it neatly appropriate to a case with facts like those found here, and if the defects in these proceedings had· arisen after its passage, there could be no question as to its applicability. But I entirely agree with the judgment below, that it cannot relieve these proceedings from the consequences resulting from the failure to give the statutory notice. Under established rules of construction, this law should be held to be prospective only. The stress in the opinion below laid upon the grammatical construction of the words " which shall have been " as used in the act, was here criticised and remarked upon as an effort to escape from a possible or probable retroactive meaning under rules of accurate composition which do not necessarily control in the interpretation of statutes. But it is not enough that words used in an act *may* be given a retrospect, without doing violence to their meaning, or that such a course may coincide with their common understanding.

Laws, generally, are enacted for the regulation of future affairs and conduct, and to establish the basis on which rights may thereafter under them be rested, and are not usually designed to alter or affect the quality or legal relations of past acts and concluded transactions, much less to disturb rights which have arisen under laws running concurrently with their birth. Hence we do not look for or expect in any enactment that it shall be operative as of time prior to its own existence; and before we are permitted to ascribe to it such purpose, there must be found in the law such clear and indubitable ex-

pression of the legislative design as precludes any other reasonable interpretation of the words used. The rule in the courts is, that retroactive effect will not be given to a statute when the words in it can be construed as designed to make it prospective only. *Williamson* v. *N. J. S. R. R. Co.*, 2 *Stew. Eq.* 311. All legislation is framed, or presumed so to be, in view of this conspicuous canon of construction governing in courts where the duty of interpretation is reposed. And when the legislature intend to give to law of their enactment operation upon the past, they will and must do it with such choice of words as places it beyond the realm of doubt. I have not examined this statute in view of the question whether, if retroactive effect were given to it, it would disturb or impair vested rights. It is needless to say that it would be ineffective in that, on rules more cogent than those of mere construction.

For the foregoing reasons, I shall vote to affirm the judgment, with costs.

*For affirmance*—CHIEF JUSTICE, DEPUE, KNAPP, MAGIE, REED, CLEMENT, COLE, KIRK, PATERSON, WHITAKER. 10.

*For reversal*—None.