251 N.J. Super. 160 (1991)
597 A.2d 567
KELLY HAYES, PLAINTIFF,
v.
STEVEN HAYES, DEFENDANT.
Superior Court of New Jersey, Chancery Division Atlantic County, Family Part.
Decided July 22, 1991.
*161 Mark Vasser for plaintiff.
Steven Hayes, pro se.
*162 SELTZER, P.J.F.P.
This opinion is filed to expand upon the reasons previously given for my refusal to enforce the child-support provisions of a domestic violence order. That refusal has res judicata implications and requires an analysis of the nature of domestic violence proceedings. The present motion arises from the provisions of a final order entered pursuant to the Prevention of Domestic Violence Act, N.J.S.A. 2C:25-1 et seq., as the result of the following history.
On February 19, 1991, plaintiff filed a complaint seeking emergent injunctive relief under the Prevention of Domestic Violence Act. The complaint requested the entry of an order prohibiting defendant from going to plaintiff's residence or place of employment or having contact with her in any way. The complaint did not seek support for either plaintiff or the parties' 18-month-old child, nor did it seek custody of the child. On the same day, after appropriate findings, a temporary ex parte restraining order was entered, N.J.S.A. 2C:25-13(c), granting the requested relief and awarding custody to plaintiff. No child support was ordered. A hearing on the complaint was scheduled for February 28, 1991. Both parties appeared on that date and the hearing was ultimately conducted on March 7, 1991. On that date, 29 other final hearings and 4 contempt trials were also scheduled.
After testimony was received from both parties, a finding of domestic violence was entered. At this point, and for the first time, defendant sought visitation and plaintiff sought child support. Although no such relief had been requested in the complaint and no counterclaim had been filed, the court recognized the nature of domestic violence proceedings and, in effect, treated the requests as cross-motions to amend the pleadings and proceeded to consider the requests. Cf. Maksuta v. Higson, 242 N.J. Super. 452, 577 A.2d 185 (App.Div. 1990). During a brief colloquy in which the court attempted to elicit sufficient facts to permit the entry of some temporary order, the parties *163 advised that there was a support action pending. With the income information gleaned from the participants in the short period of time available, the court entered a final order on March 7, 1991. That order: (1) made the restraints permanent, (2) awarded temporary custody of the minor child to plaintiff subject to specified visitation with defendant, and (3) fixed a weekly support obligation of $45 "until a decision is made in the pending support action."
In fact no such support action was pending. Instead a dissolution action was instituted on April 9, 1991. No further action appears to have been taken with respect to support until June 10, 1991, when plaintiff filed a motion in the dissolution action seeking enforcement of the child-support provisions of the domestic violence order. The motion sought to compel compliance by incarceration, presumably pursuant to R. 1:10-5.
Ordinarily, defendant would be bound by the judgment of a court awarding child support (and, assuming an ability to comply, could be incarcerated until he did so) by virtue of the doctrine of res judicata. That doctrine "as a principal of law bars a party from relitigating a second time that which was previously fairly litigated and finally determined." Charlie Brown of Chatham v. Board of Adjustment, 202 N.J. Super. 312, 327, 495 A.2d 119 (App.Div. 1985). The rule, however, is not absolute. "Among the recognized exceptions to the general rule of preclusion are cases where a new determination is warranted by differences in the quality or extensiveness of the procedures in the two tribunals." Taha v. DePalma, 214 N.J. Super. 397, 400, 519 A.2d 905 (App.Div. 1986). Accordingly, if the child support provisions of the domestic violence order are "final," the order must be enforced  it would be, after all, a permanent order modifiable only on a showing of changed circumstances. If it is not a "final" order, it may not be entitled to strict enforcement. I turn, therefore, to a consideration of whether support provisions of domestic violence orders *164 are entitled to the same respect accorded other final support orders.
Domestic violence actions, by their very nature, are heard expeditiously and "frequently are conducted without the formality of counsel." Maksuta v. Higson, supra, 242 N.J. Super. at 454, 577 A.2d 185. For that reason, the technicalities of pleading do not bar relief and litigants should be permitted, as they were here, to amend their pleadings at the time of trial to obtain appropriate relief. Id. at 454-455, 577 A.2d 185. Clearly, the proceedings do not permit a full exploration of the factors fixing child support. In fact, many of the litigants appear, as they did here, to seek child support in an action which may give no notice of the application.
Accordingly, much of the information which is obtained at the hearing is information which the parties did not anticipate providing and which cannot be verified. Indeed, much of it may be unreliable. Moreover, a final order in the domestic violence action could not be entered within the statutorily mandated ten-day period if postponements were granted to ensure a proper discovery period. For example, R. 5:5-2 requires that a case information statement be filed in all contested family actions in which there is any issue as to support. Often, because of the complexity of the financial disclosure required, accurate and complete information may require several weeks to collect. While a support order must be entered to protect the victim and to prevent a hesitancy to use the system for fear of financial distress, we must recognize that the order entered may bear little relation to the appropriate support.
Besides the failure of the parties to prepare for an inquiry leading to a support order, there is a further barrier to an accurate assessment of the parties' financial situation. That barrier is the sheer number of cases which must be determined at any one time. By statute, all final hearings must be heard within ten days of the issuance of the temporary restraining order. N.J.S.A. 2C:25-13(a). This results in the utilization of *165 one day each week to hear the domestic violence cases which have accrued in the preceding ten-day period. The Administrative Office of the Courts reports that of the 22,340 cases which proceeded to a final hearing in the 12 months ending June 30, 1990, 9,099 involved issues of custody.
Accordingly, on any given domestic violence day, courts would be required to make determinations as to support in 40% of the cases. It is unreasonable to expect a full and fair litigation of those issues under such time pressure. Indeed, the overwhelming crush of cases on any given domestic violence calendar day may very well prohibit a reasoned determination of support obligations. Moreover, this problem would almost certainly be aggravated if the domestic violence support provisions were considered "final" and subject to change only on a showing of changed circumstances. In that case, attorneys would almost certainly insist on full hearings and, in the absence of discovery, conduct that discovery on the witness stand thereby extending the length of the hearings and preventing a completion of the calendar.
Because these facts are self-evident, our courts have always recognized that "the support order authorized by the act is intended to bridge the emergent situation and not to be a substitute for other more orderly procedures for support." Mugan v. Mugan, 231 N.J. Super. 31, 33, 555 A.2d 2 (App.Div. 1989). Accordingly, the quality and extensiveness of proof respecting support in a domestic violence action is so superficial that it should not be afforded the finality and deference due an order resulting from a full consideration of the litigants' positions. We must, therefore, consider whether to enforce the order under these circumstances.
Here, plaintiff did not avail herself of the other orderly processes available for fixing support. She delayed any action for a period of four months and then sought defendant's incarceration for his failure to comply with a four-month-old order which may not have been correct initially. Under these *166 circumstances, where there is no certainty that the support order entered fairly represents defendant's obligation and where plaintiff has refused to avail herself of other means of fairly fixing that obligation, the court is under no obligation to enforce it.
This does not mean that plaintiff is remediless or that an emergent order is meaningless. Having received an emergent support order, immediate application may be made to fix that order with the same degree of finality achieved in any support hearing. For example, a complaint may be filed for support simultaneously with the domestic violence complaint. This would institute the normal deliberate fact-finding process resulting in a final support order and it would not effect the temporary domestic violence order. If defendant pays in accordance with the temporary order until the support order is finalized, no problem arises. If the payor fails to pay, a motion may be made in the support action fixing a pendente lite order coextensive with the domestic violence order and relief may be had therefrom. In the typical case, however, support actions are concluded within one month of their institution.
Several factors suggest that requiring the filing of a separate support action is more appropriate than attempting to invest domestic violence support provisions with any degree of finality. We have already seen that domestic violence orders, by necessity, are entered without the considerations we expect to underlie our final orders. If the domestic violence order is invested with the same deference accorded other "final judgments," the support component may not be modified without a showing of changed circumstances. Lepis v. Lepis, 83 N.J. 139, 416 A.2d 45 (1980). This is surely a result we should not seek especially since the provisions of a "final" domestic violence support order could not be modified retroactively. N.J.S.A. 2A:17-56.23a. I note this is true in the converse. It is equally unfair to bind a custodial parent to an unrealistically low order *167 because that parent cannot show a change of circumstances from the entry of the domestic violence restraining order.
Moreover, domestic violence orders are themselves subject to modification by virtue of the acts of the parties. Reconciliation of the parties, for example, acts as a de facto vacation of the order. Mohamed v. Mohamed, 232 N.J. Super. 474, 557 A.2d 696 (App.Div. 1989). Accordingly, if a final support order is entered in a domestic violence case and the parties reconcile, that order (including, presumably, the support provision) would be vacated. Clearly, it would be difficult to have some provisions of a final order remain in effect while others are vacated depending upon the actions of the parties.
Although no reason is apparent for treating domestic violence support orders differently, a quite different result obtains with respect to a regularly entered support order, which is not vacated by the reconciliation of the parties. Rather, a court order is necessary. Cf. Ohlhoff v. Ohlhoff, 246 N.J. Super. 1, 586 A.2d 839 (App.Div. 1991). Experience teaches that temporary reconciliations often occur in domestic violence settings and, accordingly, any attempt to incorporate permanent child support provisions in domestic violence orders runs the substantial risk of administrative difficulty without obtaining any concurrent benefit. The Appellate Division has warned specifically against the utilization of "a stale domestic violence order" as a vehicle for enforcing child support arrears. Mohamed v. Mohamed, 232 N.J. Super. at 475, 557 A.2d 696. The same warning applies here with equal force.
The conclusion that the child support provisions of a domestic violence order should not be enforced, as requested here, is further buttressed by the provisions of N.J.S.A. 2C:29-9, which provides that a knowing violation of any provision in a domestic violence order constitutes a crime of the fourth degree (or in some cases, a disorderly persons offense). That section, however, specifically excludes violations of orders determining child support, child custody, visitation or the like from its ambit. *168 Although there are other provisions for incarceration for failure to follow a court order (specifically R. 1:10-1 through -5 inclusive), it is unreasonable to believe that the Legislature specifically prohibited utilization of contempt proceedings if it contemplated that other incarceration could be used to compel compliance. This demonstrates a legislative recognition of the extremely limited purpose of the child support provisions of a domestic violence order. They are intended solely to protect the custodial parent on an emergent basis.
It is possible, I suppose, to construct a theoretical basis which permits the entry of a "final" support order which is treated differently from any other final order but no benefit is readily apparent from torturing the theoretical underpinnings of our law of support. There is no inconvenience to the litigant who may file the actions simultaneously. What minor administrative duplication occurs is more than offset by practical considerations and theoretical consistency.
In short, there is no reason to treat a domestic violence support order as anything more than a stop gap measure effective only for so long as it takes to institute expeditiously a proper support action and diligently pursue it to a conclusion.[1] Under all of the circumstances, it is unfair to a litigant to enforce the provisions of a domestic violence restraining order where the opportunity to fully and fairly litigate the amount of the child support obligation is not present and where no expeditious attempt has been made by the custodial parent to initiate an orderly and deliberative child-support fixing procedure. The application for enforcement is denied.
NOTES
[1] This conclusion is supported by the recent amendments to the Prevention of Domestic Violence Act which provide in section 13(b)(10). "An order awarding emergent monetary relief to the victim and other dependents, if any. An ongoing obligation of support shall be determined at a later date pursuant to applicable law." Clearly, the amendment recognizes the temporary nature of a support order entered in a domestic violence action and the necessity for further, more deliberative, proceedings.