to take reasonable measures to safeguard himself in the face of the known danger, that the inference would not be available. *Id.* at 607–08, 222 *A.*2d 78.

Reversed and remanded as to all issues.

670 A.2d 51

D.C., PLAINTIFF–RESPONDENT, v. F.R., DEFENDANT–APPELLANT.

Superior Court of New Jersey
Appellate Division

Argued November 28, 1995—Decided January 23, 1996.

590 

594 

 
 

Before Judges BAIME, VILLANUEVA and KIMMELMAN.

*James F. Keegan* argued the cause for appellant (*Bendit, Weinstock & Sharbaugh,* attorneys; *Mr. Keegan,* of counsel; *Sherri Davis Fowler* and *Robert P. Kramer,* on the brief).

*Beth A. Callahan* argued the cause for respondent (*Clancy, Callahan & Smith,* attorneys; *Ms. Callahan,* on the brief).

The opinion of the court was delivered by

BAIME, J.A.D.

The Prevention of Domestic Violence Act of 1991 (*N.J.S.A.* 2C:25–17 to –33) was designed to protect victims of domestic violence and to provide uniformity in prosecuting and adjudicating such claims. When the Act was originally adopted, it offered no protection to individuals subjected to violent acts by persons whom they had merely dated. In 1994, the Act was amended to cover victims of domestic violence who had engaged in a dating relationship with the offender. *L.*1994, *c.* 93, § 1. The

principal question presented in this case is whether the Act may be applied to remedy pre-amendment acts of violence having their origin in a dating relationship. We hold that the amendment substantially altered the scope of the Act by expanding the class of persons eligible for protection under it and thus should be applied only prospectively. However, we also conclude that where an act of domestic violence arising out of a dating relationship has occurred after the effective date of the amendment, the prior history of domestic violence between the parties may be considered by the trial court in determining the appropriate injunctive or monetary remedy.

## I.

This case involves charges of harassment and stalking after a dating relationship between two teenagers soured. All but one of the acts of domestic violence are alleged to have occurred prior to the effective date of the amendment. We need not recount the sordid details at length. Although the proceedings were protracted and the resulting record voluminous, we recite only those facts essential to an understanding of the issues raised.

Plaintiff and defendant attended the same high school and engaged in a dating relationship for approximately thirteen months, beginning in September 1992 and ending in October 1993. Despite its length, the relationship was extremely volatile. According to plaintiff, defendant convinced her after repeated coaxing to pose for sexually explicit photographs. The photographs allegedly were taken in defendant's automobile in January 1993, when plaintiff was sixteen years old. Plaintiff also asserted that defendant promised not to show the photographs to anyone, but subsequently threatened to send copies to her parents. Based upon these threats, defendant persuaded her to engage in sexual acts and to pose for a second set of photographs, which were taken in March 1993. We need not describe these photographs in detail. Suffice it to say, two of the second set of photographs depict plaintiff engaging in fellatio. Plaintiff further contended that

defendant took an additional photograph of her topless during a summer excursion to the shore in 1993. Prior to the hearing, plaintiff subpoenaed the photographs, which were subsequently admitted into evidence and are presently sealed.[1]

Defendant admitted taking all of the photographs except the topless one, which he claimed was given to him by plaintiff. However, defendant contended that plaintiff posed willingly and that he never threatened to expose the photographs to her parents or to others. He also offered a different chronology concerning when the photographs were taken. We need not recite in detail defendant's testimony regarding these events. It is enough to say that defendant claimed the initial photographs of plaintiff in the automobile were taken in the summer of 1993, not the winter as plaintiff testified. He asserted that a close inspection of these pictures corroborated his account because a pair of bikini bottoms appears on the floorboard of the vehicle. Defendant claimed that other demonstrative evidence bolstered his description of the times and places the photographs were taken and supported his contention that plaintiff's allegations of threats and domestic violence were entirely fabricated.

It is undisputed that plaintiff continued to date defendant after the photographs were taken. Plaintiff did not end the relationship until October 21, 1993. On October 27 she gave defendant a detailed letter describing their differences. According to plaintiff, defendant persisted in his attempts to resume their relationship despite her repeated protestations.

We need not describe these incidents of harassment and stalking in detail. We merely note that defendant's alarming and sometimes bizarre behavior became increasingly threatening with each rebuff. Moreover, family and police intervention had no deterrent effect on him. Defendant persisted in his alarming

---

[1] In his brief, defendant contended that he had a property interest in the photographs and thus demanded their return. This argument was abandoned at oral argument.

conduct long after it became apparent that his efforts to renew the relationship were futile.

As we noted earlier, only one of the alleged acts of domestic violence took place after enactment of the amendment permitting complaints arising out of a dating relationship. This act occurred on the night of August 31, 1994. While driving home, plaintiff noticed what appeared to be Saab headlights coming from the opposite direction. Plaintiff became concerned because she had earlier seen defendant driving a Saab. Plaintiff's fears were further heightened when, peering in her rearview mirror, she noticed the Saab make a U-turn and pull behind her automobile. Through the rearview mirror, plaintiff was able to observe defendant driving the Saab. As plaintiff accelerated, the Saab closely followed with its horn honking and its high beams flashing. According to plaintiff, the two automobiles reached speeds approaching eighty-five miles an hour. Ultimately, plaintiff drove her car to the police station, thereby effectively ending the chase.

Defendant denied his involvement in the August 31 incident. He claimed that the Saab was at a repair shop that night and that he, his brother and a friend were attending a nightclub in New York City. To corroborate his account, defendant introduced telephone records which disclosed a telephone call from the nightclub to his home at 4:12 a.m. on September 1, 1994.

The trial judge rendered a series of oral and written opinions in which he made specific findings that plaintiff's testimony was credible and that defendant's account was untrustworthy. The judge determined that plaintiff posed for the second set of photographs out of fear that defendant would show the first set to her parents and that defendant committed a sexual assault by coercing plaintiff to engage in fellatio. *See N.J.S.A.* 2C:13–5a; *N.J.S.A.* 2C:14–2c. The judge also found that defendant committed acts of stalking, *see N.J.S.A.* 2C:12–10, and harassment, *see N.J.S.A.* 2C:33–4, culminating in the automobile chase of August 31, 1994. The judge applied retroactively the amendment protecting victims from violent acts arising out of a dating relationship and assessed

punitive damages for each episode of stalking and harassment. The punitive damages totalled $5,875. The judge also awarded the plaintiff compensatory damages and attorneys' fees totalling $14,891. The judge issued a restraining order prohibiting defendant from "displaying, assigning, . . . publishing, printing, promoting, advertising [or] discussing" any of the sexually explicit photographs. The judge also directed that the photographs be sealed. Noting that defendant's parents had become embroiled in the dispute, the judge restrained both defendant and his parents from having any contact with plaintiff and her family.

## II.

Before addressing whether the amendment should be applied retroactively, we briefly comment on defendant's attack upon the Family Part judge's factual findings. Defendant claims the judge ignored compelling demonstrative evidence which disclosed that plaintiff was not telling the truth respecting the times and places the sexually explicit photographs were taken. We reject this contention. To be sure, the evidence presented by defendant raised serious questions concerning the chronology of events. However, the judge's key factual findings are supported by substantial credible evidence contained in the record. *Rova Farms Resort v. Investors Ins. Co. of America*, 65 *N.J.* 474, 484, 323 *A.*2d 495 (1974). As we noted earlier, the judge made specific findings regarding the credibility of the witnesses. Some of these findings were based upon the judge's observations of the demeanor of the witnesses while testifying. We are obliged to accord special deference to those findings which were substantially influenced by the judge's opportunity to hear and see the witnesses and to have the "feel" of the case, which an appellate reviewing court does not enjoy. *State v. Johnson*, 42 *N.J.* 146, 161, 199 *A.*2d 809 (1964). Beyond this, we cannot fairly say from our examination of the record that the judge's critical findings were so clearly mistaken or so plainly unwarranted that the interests of justice

demand intervention and correction. *Id.* at 162, 199 *A.*2d 809. The opposite is true.

■ We also reject the argument that the trial judge's factual findings were contaminated because he drew an adverse inference from defendant's failure to produce a witness in support of his testimony that the Saab was in the repair shop when the car chase took place. We agree with the judge that it was within defendant's power to produce such evidence, that such proof would have been superior to other evidence already presented and not merely cumulative, and that such evidence was not equally available to both sides. *See Maul v. Kirkman,* 270 *N.J.Super.* 596, 609–10, 637 *A.*2d 928 (App.Div.1994); *Wild v. Roman,* 91 *N.J.Super.* 410, 414, 220 *A.*2d 711 (App.Div.1966).

■ Equally unpersuasive is defendant's contention that the judge erroneously believed defendant had the burden of proving alibi. Although the judge incorrectly assigned the burden of proof to defendant at one point in his opinion, he subsequently corrected the mistake. We discern no prejudice from the judge's momentary lapse. In sum, we perceive no sound basis to disturb the judge's factual findings.

### III.

■ We conclude that the Family Part judge erroneously applied the 1994 amendment to pre-amendment acts of domestic violence.[2] A venerable principle of statutory construction posits

---

[2] We add for the sake of completeness that stalking was not one of the offenses listed by the Act as an act of domestic violence prior to the 1994 amendment. In addition to providing protection to victims who merely had a dating relationship with the offender, the amendment added stalking to the list of acts constituting domestic violence. *L.*1994, *c.* 94, § 1. The Family Part judge found that defendant committed several acts of stalking 'prior to the effective date of the amendment. The judge also assessed punitive damages against defendant based upon those acts. The retroactive application of this part of the 1994 amendment was never addressed below. Neither party has raised the question here. In

that "statutes should not be given retrospective application unless such an intention is manifested by the Legislature in clear terms." *Skulski v. Nolan,* 68 *N.J.* 179, 202, 343 *A.2d* 721 (1975). *See also South Hamilton Assocs. v. Mayor & Council of the Town of Morristown,* 99 *N.J.* 437, 444, 493 *A.2d* 523 (1985); *Gibbons v. Gibbons,* 86 *N.J.* 515, 521–24, 432 *A.2d* 80 (1981) (retrospective application determined); *Peper v. Princeton University Bd. of Trustees,* 77 *N.J.* 55, 73, 389 *A.2d* 465 (1978); *Rothman v. Rothman,* 65 *N.J.* 219, 224–25, 320 *A.2d* 496 (1974) (retrospective application determined); *Alongi v. Schatzman,* 57 *N.J.* 564, 578, 274 *A.2d* 33 (1971); *Nickell v. Gall,* 49 *N.J.* 186, 189, 229 *A.2d* 511 (1967); *La Parre v. Young Men's Christian Ass'n of the Oranges,* 30 *N.J.* 225, 229, 152 *A.2d* 340 (1959); *In re Borough of Glen Rock,* 25 *N.J.* 241, 249, 135 *A.2d* 506 (1957); *Pennsylvania Greyhound Lines v. Rosenthal,* 14 *N.J.* 372, 381, 102 *A.2d* 587 (1954); *Nichols v. Bd. of Education,* 9 *N.J.* 241, 248, 87 *A.2d* 894 (1952); *Kopczynski v. County of Camden,* 2 *N.J.* 419, 424, 66 *A.2d* 882 (1949); *Burdett v. Municipal Employees Pension Comm'n,* 129 *N.J.L.* 70, 72, 28 *A.2d* 93 (E. & A.1942); *Wittes v. Repko,* 107 *N.J.Eq.* 132, 134, 151 *A.* 850 (E. & A.1930); *Frelinghuysen v. Town of Morristown,* 77 *N.J.L.* 493, 496, 72 *A.* 2 (E. & A.1909); *Citizens' Gas Light Co. v. Alden,* 44 *N.J.L.* 648, 654 (E. & A.1882); *Williamson v. New Jersey Southern R.R.,* 29 *N.J.Eq.* 311, 333–34 (E. & A.1878); *City of Elizabeth v. Hill,* 39 *N.J.L.* 555, 558 (Sup.Ct. 1877); *Den ex dem. Berdan v. Van Riper,* 16 *N.J.L.* 7, 14–15 (Sup.Ct.1837). The purpose of this rule is to give people fair notice of the laws that they are expected to follow. " 'The hackneyed maxim that everyone is held to know the law, itself a principle of dubious wisdom, nevertheless presupposes that the law is at least susceptible of being known.' " *Weinstein v. Investors Savings and Loan Ass'n,* 154 *N.J.Super.* 164, 167, 381 *A.2d* 53 (App.Div.1977) (quoting 2 Sutherland, *Statutory Construction,* § 41.02 at 247 (4th ed. 1973)), *certif. denied,* 75 *N.J.* 598, 384 *A.2d*

---

light of our disposition of other issues in the case, we have no occasion to resolve the question.

828 (1978). Citizens cannot be expected to obey laws that have not yet been enacted. *Ibid.*

Despite its soundness, the principle disfavoring retrospective application of a statute "is not to be applied mechanistically to every case." *Gibbons v. Gibbons,* 86 *N.J.* at 522, 432 *A.2d* 80 (citing *Rothman v. Rothman,* 65 *N.J.* 219, 224, 320 *A.2d* 496 (1974)). Our Supreme Court has articulated three exceptions to the general rule against retroactive application of a statute. *Id.* at 522–23, 432 *A.2d* 80. First, a statute should be applied retroactively where the Legislature has either explicitly or implicitly expressed such an intent. *Id.* at 522, 432 *A.2d* 80 (citing *Kruvant v. Mayor of Cedar Grove,* 82 *N.J.* 435, 440, 414 *A.2d* 9 (1980); *Howard Savings Institution v. Kielb,* 38 *N.J.* 186, 193–94, 183 *A.2d* 401 (1962); *Hohl v. Tp. of Readington,* 37 *N.J.* 271, 279, 181 *A.2d* 150 (1962); *Borough of Little Ferry v. Bergen Cty. Sewer Auth.,* 9 *N.J.* 536, 547, 89 *A.2d* 18, *cert. denied,* 344 *U.S.* 865, 73 *S.Ct.* 105, 97 *L.Ed.* 670 (1952)). Second, statutes said to be "ameliorative" or "curative" may be applied retroactively. *Id.* at 523, 432 *A.2d* 80 (citing *In re Smigelski,* 30 *N.J.* 513, 527, 154 *A.2d* 1 (1959); 2 Sutherland, *Statutory Construction,* § 41.11 (4th ed. 1973)). Third, the expectations of the parties may warrant retroactive application of a statute. *Ibid.* Even assuming that one of these exceptions applies, however, a statute should not be given retroactive application if it would result in "manifest injustice" to the parties. *Ibid.*

None of these exceptions is applicable here. The statute before us does not contain an explicit directive requiring retrospective application. The amendment merely expands the list of potential victims of domestic violence to include "any person who has been subjected to domestic violence by a person with whom the victim has had a dating relationship." *N.J.S.A.* 2C:25–19d; *see also* Cannel, *New Jersey Criminal Code Annotated,* comment 4 on *N.J.S.A.* 2C:1–2 (1995) (criminal statutes are not to be applied to persons or conduct beyond the contemplation of the Legislature).

Nor may we infer a legislative design to apply the amendment retroactively from the mechanics of its operation or from its legislative history. To the contrary, other sections of the Act would be rendered nugatory if the amendment were to be given retroactive application. For example, *N.J.S.A.* 2C:25-23 requires law enforcement officers investigating allegations of domestic violence to advise victims of their rights under the Act, and *N.J.S.A.* 2C:25-24 directs such officers to file domestic violence reports of such incidents with various state and county agencies. These sections, and others, that are designed to implement the protections afforded by the Act obviously can be applied only prospectively. To accept the argument that the Legislature intended retrospective application of the amendment but that the official conduct required by *N.J.S.A.* 2C:25-23 and *N.J.S.A.* 2C:25-24 to effectuate the Act can only apply prospectively is to posit a facial disharmony which, by definition, is at variance with our responsibility "to give [the statute] the most sensible interpretation." *Gibbons v. Gibbons,* 86 *N.J.* at 522, 432 *A.*2d 80; *see also Strube v. Travelers Indemn. Co. of Illinois,* 277 *N.J.Super.* 236, 244, 649 *A.*2d 624 (App.Div.1994) (Kestin, J., dissenting), *aff'd o.b.,* 142 *N.J.* 570, 667 *A.*2d 188 (1995). Further, the legislative history indicates that the pre-amendment Act was designed to protect spouses and others in "a family or family-like setting." *N.J.S.A.* 2C:25-18. Its remedies were intended for use by cohabitants, not by people who were merely dating and thus had readier access to the criminal law enforcement system.

It is equally clear that the "ameliorative" exception is not applicable. As we said in *Kendall v. Snedeker,* 219 *N.J.Super.* 283, 530 *A.*2d 334 (App.Div.1987), the "ameliorative" exception "is one which applies only in a criminal case." *Id.* at 286, 530 *A.*2d 334. "It is the reduction of a criminal penalty which constitutes the amelioration or mitigation and distinguishes such a criminal statute from a constitutionally prohibited *ex post facto* [law] which 'imposes a punishment for an act that was not punishable at the time it was committed, or that imposes additional punishment to

that then prescribed.'" *Id.* at 286–87, 530 *A.2d* 334 (quoting *Matter of Coruzzi,* 95 *N.J.* 557, 578, 472 *A.2d* 546, *app. dism,* 469 *U.S.* 802, 105 *S.Ct.* 56, 83 *L.Ed.2d* 8 (1984)) (footnote omitted).

The "curative" exception is also inapposite. Under this exception, an amendment to a statute can be given retroactive effect if it is designed merely to carry out or explain the intent of the original legislation. *Id.* at 287, 530 *A.2d* 334. Where the amendment merely clarifies rather than changes the meaning of a law, it may be applied retroactively " 'because the true meaning of the statute has always been the same.' " *Ibid.* (quoting *Pacific Intermountain Express v. National Union Fire Ins. Co.,* 151 *Cal.App.3d* 777, 781, 198 *Cal.Rptr.* 897, 899 (1984)). An amendment that is designed to remedy a perceived imperfection in or misapplication of a statute and not to alter the intended scope or purpose of the original law may be given retroactive application. *Id.* at 288, 530 *A.2d* 334. However, the "curative" exception cannot be invoked merely because an amendment is deemed to improve a statutory scheme. If this was all that was required, every amendment would be subject to retroactive application, because presumably each time the Legislature amends a statute its intent is to improve the legislation. "To consider an enactment which 'improves' the statutory scheme (in itself a painfully subjective determination) as [falling within] the curative exception is at odds with the fundamental principle of fairness that new laws should not affect situations which predated them." *Id.* at 289, 530 *A.2d* 334.

The amendment at issue in the present case expanded the category of persons eligible for the protection and remedies granted by the Act. This constituted a clear change in the law and not an enactment designed to clarify or carry out the intent of the pre–1994 statute. *Id.* at 290, 530 *A.2d* 334; *see also Brown v. State, Dept. of Personnel,* 257 *N.J.Super.* 84, 90, 607 *A.2d* 1354 (App.Div.1992). The original statute was neither unclear nor misapplied. The amendment does not clarify the old law but

instead creates a new category of protected individuals with substantive and procedural rights that did not previously exist.

Finally, the reasonable expectations of the parties do not warrant retrospective application of the amendment. Of course, we recognize that defendant had no vested right or legitimate interest in being free from the sanction of the law when engaging in acts of domestic violence. However, our criminal laws have long prohibited acts of harassment and stalking. Plaintiff was thus entitled to the protection of these laws, and defendant was subject to their commands.[3]

We stress that prospective application of the amendment does not deny plaintiff standing under the Act. The automobile chase occurred after the amendment went into effect. To receive the protections of the amended statute, plaintiff was not required to have been engaged in a dating relationship with defendant at the time the act of domestic violence took place. All that is required by *N.J.S.A.* 2C:25-19d is that the victim "has had" a dating relationship with the offender.

Moreover, defendant's history of domestic violence against plaintiff was properly considered by the judge in determining the appropriate remedies. *N.J.S.A.* 2C:25-29a(1) mandates that the court "shall consider ... [t]he previous history of domestic violence between the plaintiff and defendant, including threats, harassment and physical abuse." We have said, albeit in a slightly different context, that "[d]omestic violence is a term of art which defines a pattern of abusive and controlling behavior injurious to its victims." *Peranio v. Peranio,* 280 *N.J.Super.* 47, 52, 654 *A.2d* 495 (App.Div.1995); *see also Corrente v. Corrente,* 281 *N.J.Super.* 243, 246, 657 *A.2d* 440 (App.Div.1995). The legislative findings that undergird the Act, which are set forth in *N.J.S.A.* 2C:25-18, indicate that the focus of the Legislature "was

---

[3] We note that numerous disorderly persons complaints relating to the incidents described in this opinion were tried in the municipal court.

regular serious abuse." *Peranio v. Peranio,* 280 *N.J.Super.* at 53, 654 *A.*2d 495; *Corrente v. Corrente,* 281 *N.J.Super.* at 247, 657 *A.*2d 440. The drafters did not intend that the commission of one of the acts designated in *N.J.S.A.* 2C:25–19 "automatically would warrant the issuance of a domestic violence order." *Corrente v. Corrente,* 281 *N.J.Super.* at 248, 657 *A.*2d 440. Instead, "[t]he law mandates that acts claimed by a plaintiff to be domestic violence must be evaluated in light of the previous history of domestic violence between [the parties]...." *Ibid.* "This requirement reflects the reality that domestic violence is ordinarily more than an isolated aberrant act," but generally includes a course of threatening behavior conducted over a period of time. *Ibid.* We thus perceive no error in the admission of evidence relating to defendant's prior acts of domestic violence. We merely add that such consideration was not limited to prior adjudications of domestic violence. Acts of domestic violence not evidenced by a judgment were properly considered. *See Roe v. Roe,* 253 *N.J.Super.* 418, 432, 601 *A.*2d 1201 (App.Div.1992).

## IV.

Nevertheless, we are constrained to remand the matter to the Family Part for modification of the judgment in several particulars. First, the judge must reconsider the punitive damages award because separate amounts were assessed against defendant for each of the many acts of domestic violence, all but one of which took place before the effective date of the amendment. That portion of the judgment awarding a specific amount of punitive damages corresponding to each separate act of domestic violence is hereby vacated. On remand, the judge may award punitive damages only with respect to the August 31, 1994 act of domestic violence. However, the judge is not bound by his prior itemization. In other words, he may increase the punitive damages award corresponding to the post-amendment incident to reflect the history of domestic violence between the parties, as long as the total amount awarded does not exceed $5,875. The judge clearly had this ceiling in mind based on his assessment of

the severity of defendant's conduct weighed against his ability to pay. *See Leimgruber v. Claridge Assocs., Ltd.,* 73 *N.J.* 450, 457, 375 *A.*2d 652 (1977). We find no unfairness in permitting such a restructuring of the punitive damage award both to punish defendant for his egregious misconduct and to deter him from committing acts of domestic violence in the future. *See Nappe v. Anschelewitz, Barr, Ansell & Bonello,* 97 *N.J.* 37, 48–49, 477 *A.*2d 1224 (1984); *Reeves v. Reeves,* 265 *N.J.Super.* 126, 127–28, 625 *A.*2d 589 (App.Div.1993); *Sielski v. Sielski,* 254 *N.J.Super.* 686, 689–91, 604 *A.*2d 206 (Ch.Div.1992); *cf. State v. Rodriguez,* 97 *N.J.* 263, 274–75, 478 *A.*2d 408 (1984); *State v. Espino,* 264 *N.J.Super.* 62, 71–73, 624 *A.*2d 27 (App.Div.1993).

▅▅▅▅ We also modify that portion of the restraining order directly prohibiting defendant's parents from having any contact with plaintiff and her family. While we recognize that defendant's parents have become embroiled in this dispute, the fact remains that no complaint was ever filed against them. Thus, they had no opportunity to file answering pleadings, present witnesses in their behalf, cross-examine plaintiff's witnesses or enjoy separate legal representation. *N.J.S.A.* 2C:25–29a provides specifically that an order under the Act "shall only restrain or provide damages payable from a person against whom a complaint has been filed. . . ." *N.J.S.A.* 2C:25–29a. We are convinced that plaintiff will be sufficiently protected by an order "forbidding the defendant from personally or through an agent initiating any communication likely to cause annoyance or alarm . . .," as provided by *N.J.S.A.* 2C:25–29b(7). Such an indirect restraint would also comport with *R.* 4:52–4, which provides that restraints are binding not only upon parties to the action but also upon "such of their officers, agents, employees, and attorneys, and upon such persons in active concert or participation with them as receive actual notice of the order by personal service or otherwise."

## V.

We find no merit in defendant's remaining arguments. *R.* 2:11–3(e)(1)(E). Specifically, we discern no error in the judge's refusal

to quash plaintiff's subpoena for production of the sexually explicit photographs or in the judge's decision to seal these items. Defendant's claim that the subpoena impaired his ability to prepare for trial is entirely disingenuous. In addition, the judge's award of compensatory damages and counsel fees was based on the evidence and comported with the Act.

Accordingly, the Family Part's judgment is affirmed in part and reversed in part. The matter is remanded to that court for further proceedings consistent with this opinion.