any event, the indemnification requires payment by the taxpayer as if it redeemed in the normal course.

We reverse the grant of the municipality's cross-motion for summary judgment, and remand for further proceedings consistent with this opinion including consideration of amounts due plaintiffs which we believe should be initially addressed by the trial court in light of our holding.

672 A.2d 1296

A.B., PLAINTIFF–APPELLANT, v. L.M.,
DEFENDANT–RESPONDENT.

Superior Court of New Jersey
Appellate Division

Argued March 12, 1996—Decided March 28, 1996.

Before Judges MICHELS, BAIME and KIMMELMAN.

*Helen Dalton Collins* argued the cause for appellant (*Bergen County Legal Services,* attorneys; *Andrea B. Williams,* on the brief).

Respondent's brief was suppressed.

The opinion of the court was delivered by

BAIME, J.A.D.

At issue in these consolidated appeals is whether a brief reconciliation of the parties automatically destroys the viability of a domestic violence restraining order entered pursuant to the Prevention of Domestic Violence Act of 1991 (*N.J.S.A.* 2C:25–17 to –33) (the Act). We hold that a final restraining order should not be set aside based upon the parties' reconciliation or mutual

violation without careful consideration by the court of the need for continued protection.

Although this litigation has a lengthy and tortured procedural history, we need not recount the facts at length. The parties met in 1986 and resided together for some period prior to 1990. Although they never married, a son was born on April 6, 1988. The parties' volatile relationship was punctuated by incidents of assault and harassment, culminating in the entry of a final restraining order on June 13, 1990, barring defendant from having any contact with plaintiff but granting him "liberal" visitation with the child. In September 1994, plaintiff applied to the Family Part for dissolution of the domestic violence order, claiming that she had "reconsidered" her relationship with defendant because he had stopped bothering her. Perceiving that this brief lull in the parties' stormy relationship would quickly end, the Family Part denied plaintiff's motion. The judge's ominous foreboding proved accurate because plaintiff subsequently filed a new domestic violence complaint in which she alleged that defendant had threatened to kill her. However, plaintiff's complaint was dismissed on the ground that the final restraints contained in the June 1990 order remained in effect.

On April 6, 1995, defendant petitioned the court for enforcement of his visitation rights. Plaintiff filed a cross-motion seeking additional restraints based upon defendant's alleged misconduct. At the hearing, defendant testified that he had resumed living with plaintiff for approximately six months following entry of the final restraining order but had moved when their relationship deteriorated. Plaintiff denied that the parties had resided together after the domestic violence order had been entered but admitted that on occasion they had engaged in sexual relations. Plaintiff also claimed that defendant had abused her and the child.

The Family Part judge found that the parties had reconciled and had resumed their personal and sexual relationship since entry of the 1990 final restraining order. The judge characterized the parties' reconciliation as a "waiver of rights under the Domes-

tic Violence Act." On the basis of this waiver, the judge vacated the final restraining order and dismissed plaintiff's domestic violence complaint. Plaintiff appealed from the order embodying these decisions.

The saga continued. On May 5, 1995, plaintiff filed a new domestic violence complaint alleging that defendant had assaulted her. In support of her claim, plaintiff presented the police officer who had responded to the scene of the alleged offense. He testified that plaintiff had "red marks" on her left arm and discoloration under her left eye. Defendant denied striking plaintiff. The judge found that plaintiff had failed to sustain her burden of proof and dismissed her complaint. Plaintiff filed a separate appeal from this decision.

We consolidated the appeals. Based upon our thorough review of the record, we conclude that the Family Part judge erred by automatically vacating the 1990 final restraining order because of the parties' reconciliation. Our reinstatement of the 1990 domestic violence order renders moot plaintiff's appeal from the dismissal of her 1995 domestic violence complaint.

The Prevention of Domestic Violence Act of 1991 was intended "to protect victims of domestic violence and to provide uniformity in prosecuting and adjudicating [their] claims." *D.C. v. F.R.*, 286 *N.J.Super.* 589, 597, 670 *A.*2d 51 (App.Div.1996). The Act creates a comprehensive scheme of criminal and civil remedies, both emergent and long-term, designed to "protect victims of violence that occurs in a family or family like setting...." *N.J.S.A.* 2C:25–18. The civil remedies under the Act include procedures for the filing of domestic violence complaints by victims, the issuance of temporary restraining orders to protect their lives, health, or well-being, and the fashioning of final restraining orders to minimize the likelihood that domestic violence will recur in the household. *See N.J.S.A.* 2C:25–28; *N.J.S.A.* 2C:25–29.

Of course, the Legislature did not intend that every final restraining order issued pursuant to the Act be forever etched in judicial stone. Indeed, the Act provides that "[u]pon good cause

shown, any final order may be dissolved or modified upon application" to the same Family Part judge who issued the order or to one with access to "a complete record of the hearing or hearings on which the order was based." *N.J.S.A.* 2C:25–29d; *see also Mann v. Mann,* 270 *N.J.Super.* 269, 274, 637 *A.*2d 170 (App.Div. 1993); *Carfagno v. Carfagno,* 288 *N.J.Super.* 424, 434, 672 *A.*2d 751, 756 (Ch. Div.1996). The question of whether reconciliation of the parties subsequent to entry of a domestic violence order constitutes "good cause" for dissolution of the prior restraints has received somewhat uneven treatment in our decisions.

In *Mohamed v. Mohamed,* 232 *N.J.Super.* 474, 477, 557 *A.*2d 696 (App.Div.1989), we held that reconciliation of the parties impairs the efficacy of a domestic violence order. *Id.* at 477, 557 *A.*2d 696; *see also Hayes v. Hayes,* 251 *N.J.Super.* 160, 167, 597 *A.*2d 567 (Ch. Div.1991). However, our holding was predicated upon the Act's predecessor statute, the Prevention of Domestic Violence Act of 1981, which was intended only to provide emergent relief to those in immediate danger of harm. *Mohamed v. Mohamed,* 232 *N.J.Super.* at 477, 557 *A.*2d 696. We emphasized that the 1981 Act was designed to "afford speedy assistance" in emergency situations and was not intended as a substitute for more orderly procedures applicable to resolution of other domestic relations issues. *Ibid.; see also Mugan v. Mugan,* 231 *N.J.Super.* 31, 33, 555 *A.*2d 2 (App.Div.1989).

We continue to harbor concern over the possible misuse of domestic violence complaints by parties seeking to gain unfair advantage in ongoing domestic disputes or to resolve long term issues more appropriately decided in divorce or other types of Family Part proceedings. *See, e.g., Corrente v. Corrente,* 281 *N.J.Super.* 243, 250, 657 *A.*2d 440 (App.Div.1995); *Peranio v. Peranio,* 280 *N.J.Super.* 47, 56–57, 654 *A.*2d 495 (App.Div.1995); *Murray v. Murray,* 267 *N.J.Super.* 406, 410, 631 *A.*2d 984 (App. Div.1993); *Mugan v. Mugan,* 231 *N.J.Super.* at 33, 555 *A.*2d 2. We note, however, that the law of domestic violence was substan-

tially revised with the passage of the 1991 Act. Police and judicial responsibilities were enhanced, and the scope of the Act's coverage was expanded to include new classes of domestic partners as well as to recognize the importance of long-term judicial relief. *N.J.S.A.* 2C:25–18; *see generally* Cannel, *New Jersey Criminal Code Annotated,* comment on *N.J.S.A.* 2C:25–18 (1995); Maura Beth Johnson, Note, *Home Sweet Home?: New Jersey's Prevention of Domestic Violence Act of 1991,* 17 *Seton Hall Legis.J.* 234 (1993) (describing the major changes in the 1991 Act).

Against this new statutory backdrop, the Chancery Division revisited the issue of the effect reconciliation of the parties has on the continued viability of a domestic violence restraining order in *Torres v. Lancellotti,* 257 *N.J.Super.* 126, 607 *A.*2d 1375 (Ch. Div.1992). Noting the new Act's recognition of the need for long-term remedies, Judge Healy concluded that "it would be unwise and improper to automatically vacate an order issued on a domestic violence complaint upon a reconciliation or mutual violation without further analysis." *Id.* at 129, 607 *A.*2d 1375.

We agree with Judge Healy's treatment of the issue. By enacting the 1991 revision of the Domestic Violence Act, the Legislature recognized that "domestic violence is a serious crime against society." *N.J.S.A.* 2C:25–18. The clearly articulated legislative objective was "to assure the victims of domestic violence the maximum protection from abuse the law can provide." *Ibid.* A rigid rule requiring the vitiation of domestic violence orders based on a finding of reconciliation regardless of the circumstances would deny victims meaningful access to the protection of the judicial system.

Such a rule would also defy reality. We have repeatedly recognized that domestic violence constitutes a "pattern of abusive and controlling behavior which injures its victim[s]," *Corrente v. Corrente,* 281 *N.J.Super.* at 246, 657 *A.*2d 440; *Peranio v. Peranio,* 280 *N.J.Super.* at 52, 654 *A.*2d 495, and usually involves "a course of threatening behavior conducted over a period of time." *D.C. v. F.R.,* 286 *N.J.Super.* at 608, 670 *A.*2d 51. The 1991 Act

itself implicitly recognizes this phenomenon in its requirement that claims of domestic violence be analyzed in light of "[t]he previous history of domestic violence between the plaintiff and defendant, including threats, harassment and physical abuse...." *N.J.S.A.* 2C:25–29a(1). The sad fact is that apparent reconciliation between people with a long history of domestic violence seldom marks the end of their difficulties.

It also bears repeating that these disputes are not private wars. Acts of domestic violence are often crimes. The public has an interest, wholly apart from that of the litigants, in the fair and effective resolution of these cases. Victims come from a variety of circumstances, but the optimism that often underlies their forgiveness of their abusers should not deny them the protection of the law. When confronted with a party's request to vacate a domestic violence order on the ground of reconciliation, the court should closely scrutinize the record to determine whether there is a likelihood that violent conduct will be repeated. The court should carefully consider the factors set forth in *N.J.S.A.* 2C:25–29a before removing the shield of protection afforded by the restraining order. *See Torres v. Lancellotti,* 257 *N.J.Super.* at 131, 607 *A.*2d 1375; *cf. Carfagno v. Carfagno,* 288 *N.J.Super.* at 436, 672 *A.*2d at 757 (setting out factors which court should consider when faced with an application to dissolve a domestic violence order for reasons other than reconciliation of the parties).

Our independent examination of the record, including a realistic appraisal of the protracted history of domestic violence it discloses, leads to our conclusion that the judge erred by vacating the 1990 restraining order. We exercise our original jurisdiction under *R.* 2:10–5 and reinstate the domestic violence order entered on June 13, 1990, except to the extent that the order was later modified to provide defendant specific periods of visitation each week and to provide for curb-side pickup and delivery of the child for purposes of visitation. We dismiss as moot plaintiff's appeal from the dismissal of her May 5, 1995 complaint.

We remand the matter to the Family Part for entry of a judgment consistent with this opinion.