726 A.2d 326

STATE OF NEW JERSEY, PLAINTIFF, v.
FRED WASHINGTON, DEFENDANT.

Superior Court of New Jersey
Law Division, Union County

Decided August 31, 1998.

682

*Deborah Cummis*, for plaintiff. (Office of the Union County Prosecutor, *Thomas V. Manahan*, Prosecutor).

*Joseph G. Czarnecki*, for defendant.

MOYNIHAN, J.S.C.

A Final Restraining Order was issued on August 7, 1995, in the matter of *V.H. v. Fred Washington.* The court took judicial notice of that order including the provisions that prohibited defendant,

Fred Washington, from having any contact with plaintiff, V.H., prohibited him from committing any future acts of domestic violence and barred him from going to plaintiffs residence. Defendant was personally served with a copy of the restraining order on August 7, 1995.

The warrant now before this court charges that the defendant violated *N.J.S.A.* 2C:29–9a and 2C:33–4 on May 10, 1998. Testimony by V.H. revealed that on that date defendant called her at home and spoke with V.H.'s son's grandmother who had answered the phone. Apparently, defendant said something to the woman which prompted V.H. to call a friend of Fred Washington to have that friend contact the defendant and tell him to stop the calls, and that V.H. would call the police if the calls continued. There is no testimony that revealed any actions taken by Fred Washington's friend. Nonetheless, defendant called V.H.'s home twice more and the two "exchanged words." V.H. told the defendant to stop calling her house and that he had no right to speak with her son's grandmother in the manner which he spoke. V.H. said that defendant never said why he called the first time.

Ten minutes after the second telephone conversation between V.H. and Fred Washington, at 2:30 p.m. or 3:00 p.m., defendant appeared at V.H.'s door. She saw the defendant through the window. He did not speak with anyone at the house and left without incident.

The police arrived approximately fifteen minutes later. Officer David A. Thomas of the Plainfield Police Department was dispatched at around 4:20 p.m. and arrived at V.H.'s residence about five minutes later. Defendant was on the phone with V.H. when the officer arrived. V.H. handed the telephone to Officer Thomas who attempted to converse with the person on the other end. That person denied that he was defendant, called for defendant aloud and told the officer that Fred Washington was not there and hung up the phone. The officer, however, recognized defendant's voice. Contrary to V.H.'s recollection, Officer Thomas testified that he did not see V.H.'s "caller ID" that showed, according to

V.H., defendant's home number. Nonetheless, there is sufficient credible evidence to find that defendant did telephone V.H.'s home and spoke with her. The two calls during which defendant and V.H. had "words back and forth" was certainly a violation of the restraining order's prohibition against such contact. V.H., after having a six year relationship with defendant, easily recognized his voice. Moreover, Fred Washington violated the order when he arrived at V.H.'s doorstep. V.H. saw him through the window shortly after they ended their conversation.

Although the court does not find there is sufficient evidence to find that defendant made calls from various phone booths in Dunellen after his conversation with Officer Thomas, the court is satisfied that defendant violated those provisions in the restraining order which prohibited any contact with V.H. and that barred him from her residence. Defendant well knew that the restraints were still in effect. Fred Washington was duly served with a copy of the restraining order. Defendant asked V.H. if she would apply to dismiss the restraints. V.H. testified that she and defendant had an agreement that she would not call the police as long as he remained calm and in control. Defendant tried to conceal his identity from Officer Thomas when the officer tried to converse by phone with Fred Washington at V.H.'s home. There is no doubt that Fred Washington knew about the restraints and that he knew he was violating the restraining order on May 10, 1998.

■ Defendant contends that there is sufficient cause to dismiss the order retroactive to October, 1996, when Fred Washington and V.H. started to cohabit. He argues that after the issuance of the restraining order, the two lived together, had multiple mutual acts of sexual intercourse, went to Jamaica and had a great deal of contact with each other.

Defendant cites *Mohamed v. Mohamed,* 232 *N.J.Super.* 474, 557 *A.*2d 696 (App.Div.1989), *Torres v. Lancellotti,* 257 *N.J.Super.* 126, 607 *A.*2d 1375 (Ch.Div.1992), and *A.B. v. L.M.,* 289 *N.J.Super.* 125, 672 *A.*2d 1296 (App.Div.1996) as support for his position.

Neither the court nor counsel have found any New Jersey case directly on point to support or oppose defendant's contention that a reconciliation between the parties to a restraining order can vitiate that restraining order so as to serve as a defense to a charge of contempt for violating same. In fact, a 1993 Hofstra Law Review article singled out New Jersey as the only state where reunification was a reason to justify removal of a restraining order. *Providing Legal Protection for Battered Women: An Analysis of State Statutes and Cases,* 21 *Hofstra L.Rev.* 801, 1115 (1993). The cases cited by defendant address the issue of reconciliation in a civil context, not a criminal one. However, no reported case has addressed reconciliation in a quasi-criminal matter.

Our courts, even in civil cases, have discerned that "it would be unwise and improper to automatically vacate an order issued on a domestic violence complaint upon a reconciliation or mutual violation without further analysis." *See Torres, supra* at 129, 607 *A.*2d 1375. Judge Baime, in *A.B., supra* at 130–31, 672 *A.*2d 1296, found:

> A rigid rule requiring the vitiation of domestic violence orders based on a finding of reconciliation regardless of the circumstances would deny victims meaningful access to the protection of the judicial system.
>
> Such a rule would also defy reality. We have repeatedly recognized that domestic violence constitutes a "pattern of abusive and controlling behavior which injures its victim[s]," *Corrente v. Corrente,* 281 *N.J.Super.* at 246, 657 *A.*2d 440; *Peranio v. Peranio,* 280 *N.J.Super.* at 52, 654 *A.*2d 495, and usually involves "a course of threatening behavior conducted over a period of time." D.C. v. F.R., 286 *N.J.Super.* at 608, 670 *A.*2d 51. The 1991 Act itself implicitly recognizes this phenomenon in its requirement that claims of domestic violence be analyzed in light of "[t]he previous history of domestic violence between the plaintiff and defendant, including threats, harassment and physical abuse. . . ." *N.J.S.A.* 2C:25–29a(1). The sad fact is that apparent reconciliation between people with a long history of domestic violence seldom marks the end of their difficulties.

The court then went on to outline the procedure that should occur when considering an application to dismiss a restraining order after an alleged reconciliation of the parties thereto:

> When confronted with a party's request to vacate a domestic violence order on the ground of reconciliation, the court should closely scrutinize the record to determine whether there is a likelihood that violent conduct will be repeated. The court

should carefully consider the factors set forth in *N.J.S.A.* 2C:25–29a before removing the shield of protection afforded by the restraining order. *See Torres v. Lancellotti,* 257 *N.J.Super.* at 131, 607 *A.*2d 1375; *cf. Carfagno v. Carfagno,* 288 *N.J.Super.* at 436, 672 *A.*2d at 757 (setting out factors which court should consider when faced with an application to dissolve a domestic violence order for reasons other than reconciliation of the parties).

[*Id.* at 131, 672 *A.*2d 1296.]

The court is cognizant of *C.O. v. J.O.,* 292 *N.J.Super.* 219, 678 *A.*2d 748 (Ch.Div.1996), which held that a reconciliation acts as a de facto removal of a restraining order. This court is of the opinion that that case is inapplicable.

*C.O.,* is a civil case. This is a quasi-criminal action. Here the issue is whether the State proved beyond a reasonable doubt that the defendant knowingly violated a provision of a restraining order.

■ This court does not believe that the conduct of parties to a domestic violence order can serve as a defense to a contempt charge. Courts must control the operation of their own orders. An order of a court must be obeyed unless and until a court acts to change or rescind it. *See State v. Roberts,* 212 *N.J.Super.* 476, 515 *A.*2d 799 (App.Div.1986).

■ In contempt proceedings, "the primary consideration is vindication of the authority of the court." *In re Adler,* 153 *N.J.Super.* 496, 501, 380 *A.*2d 298 (App.Div.1977). Quoting the trial judge, the *Adler* court continued, " 'for the continuation of our society in its present form court orders must be obeyed.' " *Id.* "Therefore the paramount purposes in sentencing for contempt of court are retribution and deterrence." *Id.*

Although *Adler* involved proceedings against teachers striking in violation of a court order, the interest of the court in enforcing its orders is the same here and, therefore, the principles set forth in *Adler* apply to the instant case.

Reconciliation may very well serve as a ground to dismiss a restraining order. However, no party may make that determination. As the Appellate Division in *A.B.* held, courts must consider

the statutory factors in *N.J.S.A.* 2C:25–29a before dismissing a restraining order. *See also N.J.S.A.* 2C:25–29d. Parties must apply to the court so that there is judicial control over the orders. Absent court action, the restraining order remains in effect even if the parties have seemingly reconciled.

Indeed the very terms of the Order with which defendant was served provide:

> This Order is to become effective immediately and shall remain in effect until further order of the Superior Court, Chancery Division, Family Part.
>
>           \*       \*       \*
>
> THIS ORDER CANNOT BE CHANGED BY EITHER PARTY WITHOUT OBTAINING A WRITTEN COURT ORDER. IF YOU WISH TO CHANGE THE TERMS OF THIS ORDER, AND/OR RESUME LIVING TOGETHER THE PLAINTIFF MUST APPEAR BEFORE THIS COURT FOR A REHEARING.

Courts in other jurisdictions have considered the issue presented here and have also concluded that the parties' actions cannot serve as a defense to a contempt charge.

In *State v. Townsend,* 183 *Ill.App.*3d 268, 131 *Ill.Dec.* 741, 538 *N.E.*2d, 1297 (1989), the Illinois Appellate court considered a contempt charge for violating a domestic violence restraining order where the plaintiff invited the defendant to her home and testified that she told the defendant that she intended to apply for a dismissal of the restraining order. Defendant contended that "he could not have willfully violated something he thought no longer existed." *Id.* 131 *Ill.Dec.* 741, 538 *N.E.*2d at 1299.

The Illinois Appellate court held:

> Orders of protection are orders of the court, not orders of the victims. (Ill.Rev. Stat.1987, ch. 40, par. 2312–7.) We agree indirect criminal contempt for violations of these orders necessitates proof beyond a reasonable doubt of a wilful violation, but we do not agree that a victim's invitation to violate the court's order frees those contemnors from conviction for wilful misconduct. A contrary result would lead to mockery of the powers granted the courts under the Act. *Id.*

In *Cole v. Cole,* 147 *Misc.*2d 297, 556 *N.Y.S.*2d 217 (Fam.Ct.DE Cty.1990), the petitioner-victim sought sanctions against respondent-defendant who allegedly violated a restraining order. The order provided, in language similar to the order in the instant

case, that it would remain in effect until modified or terminated by a future order of the family court or of some other court having competent jurisdiction. *See Id.* at 217.

Shortly after obtaining the restraining order, petitioner allowed respondent to reside with her in her residence, living together as "husband and wife for a period of several months." The couple engaged in sexual intercourse "from time to time" while living together. On February 10, 1990, petitioner moved from the residence with her children. *See Id.* at 218.

On March 1, 1990, petitioner filed a complaint in the Family Court alleging respondent forced his way into her new residence, refused to leave and assaulted her. That complaint was dismissed on procedural grounds. *See Id.* at 218.

Respondent went to petitioner's residence again on March 21, 1990, "pushed his way past the petitioner's daughter; insisted on talking with the petitioner; was told by the petitioner to say what he wanted and get out; informed the petitioner that he wanted to engage in sexual intercourse; pushed her to the floor when she refused to have sexual intercourse; and engaged in sexual intercourse with the petitioner against her will." *See Id.* at 217.

Rejecting respondent's argument that petitioner waived her right to protection under the order when she cohabited with respondent, thus estopping her from invoking the protections, the *Cole* court held:

The petitioner does not here seek to have the respondent dealt with for having been at her residence during those many times to which she consented and acquiesced. The question of whether or not she waived her rights to enforce the order as to such past times is not presented to the court.

Instead, she presents contemptuous conduct of the respondent which occurred after a period of cohabitation had terminated by her departure from the home to another dwelling, and after making known to the respondent in clear and unequivocal terms, that she objected to his presence. It is also clear that she did not consent to being pushed to the floor so that the respondent could have sexual intercourse with her after she refused his demand.

This Court agrees with the New York Court's [Family Court] holding [relating to the prior complaint that was dismissed] that, the validity of the court's order was in no way impaired, affected, nor nullified, by the petitioner's consensual cohabitation

with the respondent after entry of the order. As stated in the order itself, the order remains in full force and effect until such time, if at all, as the order is modified or terminated by a future order of the court having competent jurisdiction.

The court holds that acquiescence by a petitioner in cohabitation by a respondent after an order of protection is issued does not constitute a waiver by the petitioner of the right to be free from intrusions by the respondent after cohabitation terminates, upon either the rights of safety or the rights of privacy secured by the order. A victim of domestic violence who has procured an order of protection is entitled to the court's protection from further violence throughout the duration of an order of protection, even if the victim is desirous of pursuing a goal of voluntary reconciliation with the offender. Attempts to salvage the otherwise beneficial aspects of a relationship which is afflicted by unlawful behavior would be discouraged if the law permitted the very attempt of salvation to result in a loss of protection from the sinister aspect. The law does not impair an individual's choice to pursue a relationship with one whose prior conduct has evinced a need for judicial limits upon destructive behavior.

[556 *N.Y.S.*2d at 219].

This court agrees. It also believes it would be folly to allow a defendant in a domestic violence contempt matter to determine if a restraining order is in effect or if it is vacated because of a reconciliation. Such defendants are safeguarded by the procedure set forth in *A.B., supra.* Defendant here failed to avail himself of those safeguards. As such, for the same reasons set forth by the courts in *Townsend, supra* and, especially, *Cole, supra,* the restraining order will not be vacated nunc pro tunc to a date prior to the violation so as to justify a dismissal of the contempt charge here.

The *Cole* court, like this court, was mindful that a plaintiff may use the a plaintiff may use the restraining order as a sword instead of a shield. This curt does not find that V.H. used the restraining order as an offensive weapon. During the course of the relationship, V.H. refrained from calling the police on a number of occasions. Even on May 10, 1998, V.H. did not initially call the police. Rather, she called Fred Washington's friend.

The court cannot condone the actions of either party here. They had a great deal of contact, had intimate relations and lived together while the restraining order was in effect. The court realizes that there are times when parties to a restraining order

attempt to reconcile. There is no doubt that V.H. and Fred Washington reconciled. They lived together from October 1996, until December 1997. Thereafter, hereafter, they had sporadic contact and went to Jamaica for five days. There is no doubt, however, that on May 10, 1998, the former couple was no longer reconciled. They had little contact with each other after returning from Jamaica and that contact was initiated by defendant. Defendant knew that the restraining order was in effect. He ignored the order by contacting V.H. He chanced that V.H. would not call the police when he had contact with her. This time, however, the relationship was over and when he took another chance, V.H. filed a complaint.

This was a knowing violation of the restraining order.

This court agrees with Judge Estes's ruling in *Cole* that a defendant can protect against misuse of the restraining by applying to the court for a dismissal pursuant to the procedure set forth in *A.B.*, supra. Nothing prevented Fred Washington from applying to the court during the period of reconciliation for an order dismissing the restraints. His application at trial was too late. The offense had already been committed. There is no legislative authority under *N.J.S.A.* 2C:25–29a or 2C:25–29d, or any other precedent for dismissing a restraining order *nunc pro tunc.* The purposes of the Prevention of Domestic Violence Act of 1990, *see N.J.S.A.* 2C:25–17 to –33, would not be served if a defendant in a domestic violence action could undermine those purposes by simply attempting a reconciliation with a plaintiff, whether contrived or not, without first having obtained the imprimatur of the court.

Additionally, defendant's late request of the trial court in a domestic violence contempt proceeding is fraught with problems. This court does not have the complete record of the proceeding when the judge entered the order. Moreover, evidence of some of the factors to be considered under *N.J.S.A.* 2C:25–29a should not be heard by the trial court hearing the contempt matter. Those factors are:

(1) The previous history of domestic violence between the plaintiff and defendant, including threats, harassment and physical abuse;

(2) The existence of immediate danger to person or property;

(3) The financial circumstances of the plaintiff and defendant;

(4) The best interests of the victim and any child;

(5) In determining custody and visitation the protection of the victim's safety; and

(6) The existence of a verifiable order of protection from another jurisdiction

The previous history of domestic violence between the parties is objectionable under *N.J.R.E.* 404(b). The financial circumstances of the parties and the best interests of the victim and children, if any, are irrelevant to the contempt trial. The admission of evidence regarding the existence of immediate danger to persons or property is usually inadmissible in a proceeding seeking to determine whether the State can prove that a defendant knowingly violated a restraining order.

Defendant should have applied for a dismissal of the restraining order before he was charged with contempt. He cannot use his previous conduct with V.H. to now exonerate himself.

The State has sustained its burden of proof beyond a reasonable doubt that defendant knowingly violated the restraining order and he is found guilty of violating *N.J.S.A.* 2C:29–9a.

The State has not charged defendant with a specific section of the harassment statute so the court will consider all three subsections.

▪ There is no evidence that defendant had any physical contact with V.H. and, therefore Defendant cannot be guilty of violating *N.J.S.A.* 2C:33–4b.

▪ There is no proof that the communication was made anonymously or at inconvenient hours or that defendant used offensively coarse language. Nor was there any proof that defendant made a communication in any other manner likely to cause annoyance or alarm. V.H. testified that she and Fred Washington had "words back and forth" and that she was "aggravated and embarrassed." This is not sufficient evidence to prove that she was alarmed.

Although her reaction to the words may fit the definition of annoyance and alarm, *see State v. Hoffman,* 149 *N.J.* 564, 580, 695 *A.*2d 236 (1997). Without hearing the actual words that defendant stated, this court cannot make a determination that the communication was made with the purpose to harass. The court cannot judge if the defendant's conduct, viewed objectively, could have reasonably harassed V.H.

For the same reason, the court cannot conclude that defendant had a purpose to alarm or seriously annoy V.H. by calling her and her son's grandmother on the phone and coming to her door. Further, the court is not convinced that V.H.'s embarrassment and aggravation rose to the level of serious annoyance, *see Hoffman, supra* at 581, 695 *A.*2d 236, or that she was alarmed. In short, by failing to elicit the actual communication made by defendant, the State has failed to prove that Defendant committed the offense of harassment. As such, the court finds defendant not guilty of that charge.