NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO.  A-0502-19

STATE OF NEW JERSEY,

      Plaintiff-Respondent,

v.

LATONIA E. BELLAMY,
a/k/a NA-NA, LATONIA
ELIZABETH BELLAMY,
LATONIA BELLAMY,

      Defendant-Appellant.

_____

> **APPROVED FOR PUBLICATION**
>
> **May 17, 2021**
>
> **APPELLATE DIVISION**

      Submitted January 21, 2021 – Decided May 17, 2021

      Before Judges Alvarez, Sumners, and Mitterhoff.

      On appeal from the Superior Court of New Jersey, Law Division, Hudson County, Indictment No. 11-03-0348.

      Joseph E. Krakora, Public Defender, attorney for appellant (Alyssa Aiello, Assistant Deputy Public Defender, of counsel and on the briefs).

      Esther Suarez, Hudson County Prosecutor, attorney for respondent (Erin M. Campbell, Assistant Prosecutor, on the brief).

      The opinion of the court was delivered by

ALVAREZ, P.J.A.D.

Defendant Latonia E. Bellamy appeals the imposition after a remand hearing of a life sentence subject to the No Early Release Act (NERA), N.J.S.A. 2C:43-7.2(a), followed by consecutive terms of thirty years' imprisonment subject to thirty years of parole ineligibility and ten years' imprisonment subject to five years of parole ineligibility. She also appeals the trial judge's denial of her pre-resentence application to obtain Division of Child Protection and Permanency (DCPP) records from her childhood, and the limits he imposed on the resentence. We agree, reverse, and remand for a third sentence proceeding before a different judge, and direct that her DCPP records be made available to her.

Defendant was convicted by a jury of the horrific, cold-blooded murder of Nia Haqq and Michael Muchioki. The murder occurred during the early morning hours of April 4, 2010, as Haqq and Muchioki returned from their engagement party.

Defendant, who was then nineteen, had spent years in the care and/or custody of DCPP, and some years in the care and custody of a family member who sexually abused her. When the murder occurred, she was a college student, and had no prior juvenile history or adult criminal record.

Defendant was in the company of two others, her cousin Shiquan Bellamy (Bellamy) and Darmellia Lawrence. Bellamy and Lawrence had

perpetrated a double murder two months prior. Bellamy had been involved in a third murder in late March.

Shortly before the murder, defendant expressed an interest to Bellamy and Lawrence in shooting a gun. She was unaware of Bellamy and Lawrence's involvement in prior murders, but knew Bellamy had weapons.

Haqq and Muchioki were killed during the ensuing carjacking and robbery. They offered no resistance and were placed face down on the ground. After her arrest, defendant told police that Bellamy killed Muchioki with a shotgun, and she fired two bullets with a handgun towards Haqq at Bellamy's direction. She acknowledged while testifying at trial that she had told Bellamy before the shooting that she wanted to fire a gun. Defendant also said she was not sure if when she fired, the bullets hit Haqq. Bellamy then took the gun from her and shot Haqq.

Despite the fact that the convictions have been previously enumerated in our unpublished affirmance, we repeat them here because of their relevance to this decision. Defendant was convicted of: first-degree felony murder during a carjacking (Muchioki), N.J.S.A. 2C:11-3(a)(3) (count eighteen); first-degree carjacking (Muchioki), N.J.S.A. 2C:15-2 (count nineteen); first-degree felony murder during an armed robbery (Muchioki), N.J.S.A. 2C:11-3(a)(3) (count twenty); first-degree armed robbery (Muchioki), N.J.S.A. 2C:15-1 (count

A-0502-19

twenty-one); second-degree possession of a weapon with an unlawful purpose (to use against Muchioki), N.J.S.A. 2C:39-4(a) (count twenty-three); first-degree murder (Haqq), N.J.S.A. 2C:11-3(a)(1) and (2) (count twenty-four); first-degree felony murder during a carjacking (Haqq) (count twenty-five); first-degree carjacking (Haqq) (count twenty-six); first-degree felony murder during an armed robbery (Haqq) (count twenty-seven); first-degree armed robbery (Haqq) (count twenty-eight); second-degree possession of a handgun for an unlawful purpose (Haqq) (count thirty); and second-degree unlawful possession of a handgun, N.J.S.A. 2C:39-5(b) (count thirty-two).

Despite the benefit that a special verdict form identifying the predicate crime for the felony murders would have provided in this case, one was not submitted to the jury. See State v. Hill, 182 N.J. 532, 549 (2005) ("Because of the merger considerations that can and do arise as a result of a jury's determination that more than one predicate felony has been established in a felony murder prosecution, a 'compelling need,' . . . is present sufficient to overcome the general principle that the use of special [verdict form] in criminal cases in [New Jersey] is 'discouraged.'" (quoting State v. Diaz, 144 N.J. 628, 643-44 (2005))).

Before sentencing defendant the first time, the court merged counts eighteen and nineteen, twenty and twenty-one, twenty-five and twenty-six, and

twenty-seven and twenty-eight. As the judgment of conviction (JOC) indicates, "[r]emaining for sentence are [c]ounts [eighteen], [twenty], [twenty-three], [twenty-four], [twenty-five], [twenty-seven], [thirty], and [thirty-two]." Thus, the offenses upon which the judge imposed sentence for the crimes against Muchioki included two felony murders (carjacking and robbery), and possession of a weapon for unlawful purpose. With regard to the crimes against Haqq, the judge sentenced defendant on murder, two felony murders, and possession of a weapon for unlawful purpose. Additionally, defendant was sentenced for unlawful possession of a weapon.

After our remand, on September 19, 2019, the trial judge resentenced defendant as follows: life subject to NERA for murder of Haqq (count twenty-four) and two terms of thirty years of imprisonment with complete parole bars for the two felony murders of Muchioki (counts eighteen and twenty), to be served consecutive to count twenty-four but concurrent with each other. The judge imposed one ten-year term of imprisonment, of which five were parole ineligible, on one count of possession of a weapon for an unlawful purpose (count twenty-three), to be served concurrently with counts eighteen and twenty but consecutive to count twenty-four. The following were made concurrent to count twenty-four: two NERA life terms on two felony murders of Haqq (counts twenty-five and twenty-seven); one ten-year term, five of

5

which were parole ineligible, on one count of possession of a weapon for unlawful purpose (count thirty); and ten years must serve five for unlawful possession of a handgun (count thirty-two).[1] Thus, defendant's new aggregate sentence is a NERA life term, followed by an additional thirty-five years of parole-ineligible time. At the resentence hearing, the judge found aggravating factors one and nine, and factor seven in mitigation. N.J.S.A. 2C:44-1(a)(1), (9); 2C:44-1(b)(7).

Prior to the resentence hearing, defendant sought release of DCPP records describing the circumstances surrounding the agency's intervention in her life. She argued the records were necessary for a complete clinical evaluation by the psychologist whose report she intended to produce at sentencing, and that the records would support the finding of additional mitigating factors. Defendant filed a notice of motion for leave to appeal when her application was denied. In the supplemental language to the order, we referred to the reason for the remand being the absence of discussion regarding mitigating factor eight. The Supreme Court denied leave to appeal from the application to our court.

---

[1] The JOC states that count twenty-three includes a five-year parole-bar, but the judge did not expressly include this minimum term at the sentencing hearing. The parole bar was no doubt imposed, given the overall structure of the sentence. Since we are ordering a resentence, no correction is necessary.

The judge refused to turn over DCPP records because he opined that defendant was her own best historian, and that the records would not be relevant because he was limited on resentencing to reconsideration of mitigating factor eight. He construed the supplemental language in the order denying leave to appeal to mean he could only reconsider that factor.

At the resentence hearing, defense counsel raised numerous arguments and made substantial submissions, including an appendix allegedly almost 300 pages in length.[2] Counsel argued mitigating factors other than eight, such as defendant's youth, traumatic childhood, and the exercise of influence upon her by Bellamy, who was her cousin. The judge did not include those arguments in his sentencing analysis. This time, he did not find aggravating factor three, which he had found earlier when he first sentenced defendant. Thus, he reimposed the earlier sentence based on aggravating factors one and nine, and mitigating factor seven.

On appeal, defendant raises the following points:

POINT I

WHERE THE APPELLATE DIVISION REVERSED AND REMANDED FOR RESENTENCING BECAUSE THE TRIAL JUDGE ERRONEOUSLY CONSIDERED AGGRAVATING FACTOR (3) AND DOUBLE-COUNTED AGGRAVATING FACTOR

---

[2] No copy was included in the appeal appendix.

 A-0502-19

(1), AND FAILED TO EXPLAIN WHY HE DID NOT CONSIDER MITIGATING FACTOR (8), THE JUDGE'S INTERPRETATION OF THE REMAND ORDER -- AS REQUIRING A STATEMENT OF REASONS ONLY -- WAS PLAINLY INCORRECT. CONSEQUENTLY, THE JUDGE ON REMAND FAILED TO ENGAGE IN A DE NOVO REVIEW OF THE SENTENCING FACTORS APPLICABLE TO MS. BELLAMY AT THE TIME OF THE REMAND HEARING, AND THUS A REMAND FOR RESENTENCING IS AGAIN REQUIRED.

A. When An Appellate Court Remands For Resentencing The Defendant Is Entitled To Be Sentenced Anew And All Current Information Relevant To An Appropriate Evaluation Of The Sentencing Factors Should Be Considered.

B. The Remand Was Not Simply For A Statement Of Reasons, Nor Did It Limit Resentencing To The Facts And Circumstances Established At The Original Sentencing Hearing.

C. The Supplemental Language Contained In The Order Denying Ms. Bellamy Leave To Appeal The Adverse Ruling Regarding DCPP Records Did Not, And Could Not, Transform The Remand For Resentencing Into A Remand For Statement Of Reasons Only.

POINT II

THE REMAND FOR RESENTENCING MUST BE REASSIGNED TO A DIFFERENT JUDGE BECAUSE, AS MS. BELLAMY ARGUED BELOW, THE TRIAL JUDGE HAS DEMONSTRATED THE INABILITY TO IMPARTIALLY ENGAGE IN A DE NOVO REVIEW OF THE SENTENCING FACTORS APPLICABLE TO MS. BELLAMY AT THE TIME OF RESENTENCING.

8

A. Reassignment Is Required Because The Judge Made An Advance Determination, Based On An Evidentially Unsupported View Of Jury's Verdict And A Biased Interpretation Of The Evidence At Trial, That He Will Not Consider Ms. Bellamy's Post-Conviction Mitigation Evidence At Resentencing.

B. The Judge Cannot Be Expected To Engage In A De Novo Review Of The Sentencing Factors Applicable To Ms. Bellamy At The Time Of Her Resentencing Because His Strong Opinions Of Ms. Bellamy, The Role She Played In The Offenses, And The Sentence She Deserves –- Formed At The Original Sentencing Hearing, Seven Years Ago –- Are Too Difficult To Change, Even If Evidence To The Contrary Is Presented.

C. The Judge's Strong Feelings About This Case Have Caused Him To Lose His Objectivity And Display Bias Against The Defense.

POINT III

BECAUSE IT APPLIED THE WRONG STANDARD, THE TRIAL COURT REACHED THE WRONG CONCLUSION WHEN IT DENIED MS. BELLAMY'S MOTION TO COMPEL RELEASE OF HER DCPP RECORDS.

A. N.J.S.A. 9:6-8.l0a Cannot Be Read To Prohibit DCPP Records From Being Released To Individuals Who Are The Subject Of The Report.

I.

When an appellate court orders a resentencing, a defendant is ordinarily entitled to a full rehearing. State v. Case, 220 N.J. 49, 70 (2014). Even "evidence of post-offense conduct, rehabilitative or otherwise, must be

considered in assessing the applicability of, and [the] weight to be given to, aggravating and mitigating factors." State v. Jaffe, 220 N.J. 114, 124 (2014). The resentencing judge must "view defendant as he stands before the court on that day unless the remand order specifies a different and more limited resentencing proceeding such as correction of a plainly technical error or a directive to the judge to view the particular sentencing issue from the vantage point of the original sentence." State v. Randolph, 210 N.J. 330, 354 (2012).

Resentence hearings are intended to afford the parties and the court the opportunity to reassess and reevaluate each and every sentencing consideration before new penalties are imposed. When an exception to that general rule applies, the appellate decision will say so.

In this case, our prior opinion stated the matter was returned to the trial court, not for the correction of a technical error, such as a merger decision, but for "resentencing consistent with this decision." State v. Bellamy, No. A-3676-12 (App. Div. Nov. 8, 2017) (slip op. at 7). Although we specifically discussed the lack of support in the record for aggravating factor three, and the need to thoroughly consider mitigating factor eight, the language of the opinion allowed defendant to be sentenced anew, in line with prior precedent.

The abbreviated supplemental language in the motion order denying leave to appeal was not intended to circumscribe the scope of a full

resentencing on the merits. It was a decision on an emergent leave to appeal motion focused on access to DCPP records. It was not intended to limit the thorough discussion of defendant's sentence in the direct appeal decision.

A remand for resentencing envisions a new sentence hearing, except where expressly limited. When we comment on errors, such as the finding of a factor lacking support in the record, that statement is binding. See Tomaino v. Burman, 364 N.J. Super. 224, 234 (App. Div. 2003) ("Clearly the appellate court's instructions to the trial court on remand are binding on that court . . . ."). Nonetheless, that does not prevent the resentencing judge from finding the same factor so long as at the remand hearing sufficient evidence is presented to support it.

If a direct appeal opinion comments in a neutral, or even favorable manner upon other factors, it amounts to dicta, almost always in response to arguments counsel raise on appeal. Because we say, by way of examples, that sufficient support exists for a finding, or that the finding of a factor was not double-counting, or where we make similar observations, that does not mandate, should the evidence at a resentence hearing differ, that the judge reach the same conclusion. Comments of that nature may offer guidance, but do not freeze-frame the judge's qualitative analysis, particularly where different proofs are offered. Circumstances evolve and people change over

11

time.  A judge's hands are tied on a resentence only if we hold the finding of a particular factor, given the record as it then existed, was error.  The judge, obviously, should not repeat the mistake.  But he or she is free to view the whole person standing before the court at that moment, within the context of the crimes of which he or she has been convicted.

## II.

Merger is a matter of legality.  State v. Romero, 191 N.J. 59, 80 (2007).  Challenges to the legality of a sentence may be made at any time.  R. 3:21-10(b)(5); State v. Zuber, 227 N.J. 422, 437 (2017).  Although it was natural that the focus in this case was elsewhere, that important albeit technical issue must now be addressed.

As to each victim, the jury returned guilty verdicts for two counts of felony murder (carjacking, robbery), and one count of carjacking, armed robbery, and possession of a weapon for an unlawful purpose.  As to Haqq, the jury returned a separate verdict for murder.  The jury also convicted defendant of possession of a weapon without a permit.

The judge merged the carjacking and robbery convictions into the respective felony murder convictions for both victims.  Since the jury found defendant guilty of Haqq's murder as well, however, the court should have merged the two felony murder convictions (carjacking and robbery) into the

12

murder charge, unmerging the carjacking and robbery offenses as to Haqq. See State v. Brown, 138 N.J. 481, 561 (1994) ("[T]he overall principle guiding merger analysis is that a defendant who has committed one offense 'cannot be punished as if for two'"; thus, convictions for "offenses that merely offer an alternative basis for punishing the same criminal conduct will merge") (quoting State v. Miller, 108 N.J. 112, 116 (1987)).

Possession of a weapon for an unlawful purpose (as to Haqq) should have merged into Haqq's murder, the robbery, or the carjacking conviction. Based on the record before us, it appears defendant possessed the gun solely for the purpose of committing the murder, robbery, or carjacking, but that decision should be made by the judge on remand based on the trial proofs. For purposes of clarity, we repeat, the felony murders as to Haqq merge into the murder of that victim. Assuming the trial record supports the conclusion defendant's possession of the weapon was solely either to murder or to steal from the victim, the offense merges either with murder or the theft offenses.

The felony murders as to Muchioki also merge, as to leave two freestanding felony murders of one victim would punish defendant for one offense as if she had committed two. Ibid. The carjacking and the robbery offenses as to that victim are therefore unmerged. The possession of a weapon for an unlawful purpose as to Muchioki merges either with the felony murders,

13

the carjacking, or the robbery conviction, based on the trial record. We again leave that to the discretion of the judge on remand, who will have the benefit of familiarity with the record and the argument of counsel. Accordingly, defendant shall be sentenced on: one murder (Haqq); one felony murder (Muchioki); one carjacking or one robbery as to Muchioki, depending on the trial judge's determination of which offense should after-the-fact comprise the predicate crime for the felony murder conviction; one carjacking (Haqq); one robbery (Haqq); and unlawful possession of a weapon.

## III.

After the parties submitted their briefs in 2020, the Legislature enacted N.J.S.A. 2C:44-1(b)(14)—a new mitigating factor—that embodied an argument defendant has made since her first hearing: that her age at the time of the killings warranted consideration at sentencing. See L. 2020, c. 110 (eff. Oct. 19, 2020). This new mitigating factor applies when a defendant is less than twenty-six years of age at the time of the crime. N.J.S.A. 2C:44-1(b)(14). Because defendant was convicted and twice sentenced before the adoption of the statute, the question we must address is whether that mitigating factor can be added to the judge's sentencing calculus at this third proceeding. Based on our reading of the savings statute and applicable law, we hold the new

14

mitigating factor must be included with the rest of N.J.S.A. 2C:44-1 at defendant's resentence.

The savings statute codifies the general rule that a new law applies prospectively only, not affecting offenses and penalties incurred prior to its enactment, unless the Legislature expresses a clear intent to the contrary. N.J.S.A. 1:1-15; State v. J.V., 242 N.J. 432, 443 (2020), as revised (June 12, 2020).

The savings statute provides:

> No offense committed, and no liability, penalty or forfeiture, either civil or criminal, incurred, previous to the time of the repeal or alteration of any act or part of any act, by the enactment of the Revised Statutes or by any act heretofore or hereafter enacted, shall be discharged, released or affected by the repeal or alteration of the statute under which such offense, liability, penalty or forfeiture was incurred, unless it is expressly declared in the act by which such repeal or alteration is effectuated, that an offense, liability, penalty or forfeiture already committed or incurred shall be thereby discharged, released or affected; and indictments, prosecutions and actions for such offenses, liabilities, penalties or forfeitures already committed or incurred shall be commenced or continued and be proceeded with in all respects as if the act or part of an act had not been repealed or altered, except that when the Revised Statutes, or other act by which such repeal or alteration is effectuated, shall relate to mere matters of practice or mode of procedure, the proceedings had thereafter on the indictment or in the prosecution for such offenses, liabilities, penalties or forfeitures shall be in such respects, as far as is practicable, in accordance with

the provisions of the Revised Statutes or such subsequent act.

[N.J.S.A. 1:1-15.]

In State in Interest of C.F., C.F. was charged in 2012 in a juvenile delinquency complaint for a murder committed in 1976, when he was fifteen years old. 444 N.J. Super. 179, 181-82 (App. Div. 2016). The State argued C.F. should be sentenced pursuant to the law in effect at the time of the offense, not the more favorable law in force at the time of his 2013 sentencing. Id. at 182. We held

> a legislative change in the "penalty" for committing an offense—even if the offense was committed prior to the change—would not be hampered by the savings statute because, in that instance, the new law would be given prospective application; in that circumstance, we would look to the part of the savings statute that applies to "penalties," not "offenses," and observe that the statute declares no penalty "incurred . . . shall be . . . affected by the repeal or alteration of the statute under which such ... penalty ... was incurred." In reading the statute this way, as we believe we must, the new sentencing law cannot be said to have been applied retroactively here because the new law, N.J.S.A. 2A:4A-44, was enacted before C.F. incurred a penalty.

> To be sure, a large gulf in time passed between the offense's commission and a penalty's incurrence; C.F. "committed" his offense in 1976 but did not "incur" a penalty until 2013. No matter how striking or unusual that circumstance may seem, it does not call for a different application of the savings statute than warranted by its express language. Put into the

16

present context, had the Legislature redefined what it meant to "commit" felony murder after 1976, the savings statute would bar application of the new law. Our focus, however, is not on the elements of the offense but on the penalty to be imposed. C.F. did not incur a "penalty" until well after 1983, when the current juvenile sentencing laws took effect; the savings statute simply has no impact on the application of those new laws to him in 2013 because, in this sense, the new law is being applied prospectively, not retroactively.

[Id. at 189-90 (alterations in original) (internal citations omitted).]

Here, the situation differs insofar as defendant will be sentenced a third time for reasons unrelated to the adoption of the statute. But the result is unchanged. The judge will be viewing defendant "as [s]he stands before the court on that day." Randolph, 210 N.J. at 354. He should apply the new law because it was enacted before she incurred the penalty. C.F., 444 N.J. Super. at 189. Thus it is prospective application of the new statute, not retrospective.

In State v. Parks, a defendant initially sentenced in January 2002 under the Three Strikes Law was resentenced in 2004, after we said "the trial judge had failed to make the required determination that defendant's prior federal bank robbery conviction constituted a 'strike' within the meaning of the Three Strikes law." 192 N.J. 483, 485 (2007). By 2004, the Legislature had amended the applicable Three Strikes Law to clarify its applicability to defendants

17

convicted of three crimes committed on three separate occasions, regardless of the dates of prior convictions. Id. at 487.

The New Jersey Supreme Court held:

> The remaining question is whether there is any reason to apply the original version of the Three Strikes Law. None has been demonstrated. To be sure, when defendant was sentenced in January of 2002, the first Three Strikes Law was in effect. However, when he was sentenced anew on April 29, 2004, the prior sentencing was nullified. At that time, the amended law was in effect. Thus, the parties' briefs and arguments on questions of retroactivity and the concomitant effect of the Savings Clause (N.J.S.A. 1:1-15) were wide of the mark. Plainly, this case does not involve a retroactivity analysis because no penalty was incurred prior to the amendment. Indeed, when defendant's resentencing took place, the new law had been in effect for a year.

> [Id. at 488.]

Because defendant will be resentenced, she has yet to incur a penalty within the meaning of the savings statute. The new mitigating factor has been in force for months, as it "[took] effect immediately." Therefore, defendant must be allowed to argue its applicability at her resentencing.

A retroactivity analysis, relevant or not, reaches the same conclusion. "The overriding goal of all statutory interpretation 'is to determine as best we can the intent of the Legislature, and to give effect to that intent.'" State v. S.B., 230 N.J. 62, 67 (2017) (quoting State v. Robinson, 217 N.J. 594, 604

(2014)).  "When the Legislature does not clearly express its intent to give a statute prospective application, a court must determine whether to apply the statute retroactively."  State v. J.V., 242 N.J. 432, 443 (2020) (quoting Twiss v. Dep't of Treasury, 124 N.J. 461, 467 (1991)).

"Generally, new criminal statutes are presumed to have solely prospective application."  Ibid.  Here, the plain language of the Assembly Bill provided that "[t]his act shall take effect immediately."  L. 2020, c. 110 (eff. Oct. 19, 2020).  This "clearly express[es legislative] intent to give [the] statute prospective application."  J.V., 242 N.J. at 443.  The plain wording, however, offers no additional guidance, because in this case the question is less straightforward—does the statute apply to a defendant who, for reasons unrelated to the statute, is being resentenced.

For the sake of argument, even if we were to consider application of the factor "retroactive" simply because it was not in effect when defendant was sentenced the first time, it should be included.  Among the recognized exceptions to the presumption against retroactive application of a law is that "the statute is ameliorative or curative . . . ."  J.V., 242 N.J. at 444 (quoting Gibbons v. Gibbons, 86 N.J. 515, 522-23 (1981)).  "Under [this] exception . . . the term 'ameliorative' refers only to criminal laws that effect a reduction in a criminal penalty."  State in Interest of J.F., 446 N.J. Super. 39, 54 (App. Div.

19

2016). "The ameliorative amendment must be aimed at mitigating a legislatively perceived undue severity in the existing criminal law." Id. at 55 (quoting Kendall v. Snedeker, 219 N.J. Super. 283, 286 n.1 (App. Div. 1987)).

The Legislature tacitly acknowledged such a purpose in the Assembly Bill, noting

> Current law provides [thirteen] mitigating factors that the court may consider when sentencing a defendant. The only mitigating factor related to the age of a youthful defendant permits the court to consider whether the defendant's conduct was substantially influenced by another, more mature person. Under the bill's provisions, the court would be permitted broadly to consider as a mitigating factor whether a defendant was under the age of [twenty-six] when an offense was committed.
>
> [Assembly Law & Pub. Safety Comm. Statement to Assembly, A. 4373 (July 20, 2020).]

Unquestionably, the Legislature wanted to fill a void in N.J.S.A. 2C:44-1(b) by making a convicted person's youth a standalone factor in the court's sentencing calculus.[3] Ibid. This draws the new mitigating factor in line with other

---

[3] "'[D]evelopments in psychology and brain science . . . show fundamental differences between juvenile and adult minds.'" Zuber, 227 N.J. at 441 (quoting Graham v. Florida, 560 48, 68 (2010)). The United States Supreme Court "identified . . . the 'parts of the brain involved in behavior control continue to mature through late adolescence.'" Ibid. (quoting Graham, 560 U.S. at 68).

statutes deemed to satisfy the ameliorative exception and justifies "retroactive" applicability.

For instance, the New Jersey Supreme Court noted—with implicit approval—the Appellate Division's determination that the revised juvenile waiver statute was "an ameliorative statute 'because it was intended to ameliorate the punitive sentencing previously meted out to adolescent offenders after waiver . . . .'" J.V., 242 N.J. at 447 (quoting J.F., 446 N.J. Super. at 55 (alteration in original)).

Yet in J.V., the juvenile was refused retroactive benefit from the revised waiver statute because he had already been waived to adult court, convicted and sentenced, all prior to the enactment of the new waiver law. Id. at 448. The court noted that no evidence existed to indicate the Legislature intended the revised waiver statute to "reach concluded cases which have already passed through the proverbial pipeline." Ibid. (quotations and citations omitted). In contrast, the defendant in J.F. did benefit from retroactive effect from the new waiver law because he "had pending proceedings in the juvenile court both before and after [the new law] became effective." Ibid.

The Legislature intended the new mitigating factor to take effect immediately, not at some distant point in the future, as transpired with the

A-0502-19

waiver law in J.V.  In the present case, defendant has yet to "pass[] through the proverbial pipeline."  Ibid.

"It is the reduction of a criminal penalty which constitutes the amelioration . . . ."  D.C. v. F.R., 286 N.J. Super. 589, 605 (App. Div. 1996). The inclusion of an additional mitigating factor has the potential to effect a "reduction of a criminal penalty[,]" thereby rendering N.J.S.A. 2C:44-1(b) ameliorative.  Ibid.  The lack of finality in defendant's case, coupled with the ameliorative nature of the new mitigating factor and her age at the time of the offenses, thus warrant "retroactive" effect of N.J.S.A. 2C:44-1(b)(14).

This is not intended to mean cases in the pipeline in which a youthful defendant was sentenced before October 19, 2020, are automatically entitled to a reconsideration based on the enactment of this statute alone.  Rather, it means where, for a reason unrelated to the adoption of the statute, a youthful defendant is resentenced, he or she is entitled to argue the new statute applies.

IV.

Defendant seeks access to the DCPP records from her childhood, to which she is clearly entitled.  N.J.S.A. 9:6-8.10a(b)(6) permits disclosure upon a court "finding that access to such records may be necessary for determination of an issue before it, and such records may be disclosed by the court . . . in whole or in part to the [L]aw [G]uardian, attorney, or other appropriate person

22

upon a finding that such further disclosure is necessary for [the] determination of an issue [in] court . . . ."  Pursuant to statute, the judge releasing the records conducts an in camera inspection to determine the redactions necessary to preserve the anonymity of innocent third parties.

It is true, as the judge observed, that defendant may be able to act as the historian of the abuse that led to the child welfare agency's involvement in her life.  That child's perspective, however, would only be cognizant of part of the picture.  In all likelihood, she would know little regarding the proceedings surrounding her care and, given the distortions natural to the passage of years, have an inaccurate picture of key events.  The records are necessary in order for the court to fully weigh the merits of her argument that her childhood bore some connection to the commission of the crime.

Defendant is the subject of those records as well as the requestor.  Where a defendant has a right to discovery of DCPP records to defend against criminal charges, she is entitled to them as a matter of due process.  See State v. Cusick, 219 N.J. Super. 452, 459 (App. Div. 1987) (affirming the "competing demands" posed by "the defendant's right to discovery . . . and the statutory prohibition against the release of particular information because of the public policy expressed in the statutes to keep [those] items confidential").

The purpose of the statute, after all, is to provide for the protection of children. The person with the greatest interest in these records is the child, not the agency. To enable defendant to access them to prepare for a sentence which to date has resulted in multiple consecutive terms, the aggregate of which far exceeds life imprisonment, seems equally a matter of due process.

Nor should it be necessary for defendant to turn to the Family Part. In Cusick, the records were obtained in the Law Division to assist in the preparation of a defense. It would run contrary to the spirit of the statute for the very subject of DCPP's protective services to be enjoined from compelling their disclosure in the court in which the State is proceeding against her. Defendant needed those records to assist an expert in evaluating her mental health status for the important purpose of the sentencing; in Cusick, it was a parent who needed the records for the defense of criminal charges. If the statute applies in that context, it should certainly apply here where the State is proceeding against a defendant it once protected as a child.

Defendant's additional argument that, regardless of the expert, the records should be made available for the judge to determine which are necessary and should be released to her in redacted form, is also convincing. A defendant who commits an offense at nineteen, an age barely out of childhood, should be entitled to redacted records for her benefit to enable her

 A-0502-19

to address this sentence, arguably one of the most important events in her history.

V.

Defendant also contends that the trial judge must be recused because he has demonstrated his inability to view her as she currently stands before the court. With great reluctance, we must agree recusal is appropriate.

The circumstances of the killing were particularly brutal. The judge sat through the trial and imposed sentence twice. Nonetheless, as we explained in State v. Tindell:

> A judge may not permit his or her sense of moral outrage and indignation to overwhelm the legal process. The need for dispassionate, evenhanded conduct is most acute in the sentencing phase of a criminal trial. For it is in this critical phase of the criminal process that the judge's role changes, from an arbitrator of legal disputes that arise in the course of the trial, to the dispenser of society's justice. In this role, the judge must act in a manner that reassures all affected--defendant and his [or her] family, the victims and their families, and society at large--that he or she will be guided exclusively by the factors established by law and not by the judge's personal code of conduct.
>
> [417 N.J. Super. 530, 571 (App. Div. 2011).]

In this case, the judge said that defendant's rehabilitative efforts since conviction, and her troubled childhood, would not change his mind about her character and the aggravating and mitigating factors. In so doing, he failed to

acknowledge defendant's rehabilitative efforts.  Case, 220 N.J. at 70; Randolph, 210 N.J. at 354; see also State v. Sainz, 107 N.J. 283, 288 (1987) (explaining that the purpose of weighing the sentencing factors is "to insure that sentencing is individualized without being arbitrary").  Furthermore, the judge failed to acquire potentially significant background information, and to allow defendant to fully brief a sentencing expert.

On remand, the new judge must consider the person defendant has become as she stands before the court.  If presented with the argument, a new judge must at least have the information necessary to assess whether defendant's childhood provides context for her criminal conduct.

The trial judge justified consecutive sentences because of the severity of defendant's crimes and the fact there were two victims.  The new judge should at least include in the analysis the real time consequence here, including the effect of mandatory parole bars.  See State v. McFarlane, 224 N.J. 458, 467-68 (2016) (explaining the process of weighing the factors); State v. Louis, 117 N.J. 250, 255 (1989) (ruling that while the defendant's crimes were horrific, the multiple consecutive terms appeared to be based on double-counting and resulted in a manifestly excessive aggregate term); State v. Marinez, 370 N.J. Super. 49, 58-59 (App. Div. 2004) (stressing the importance of the real-time

consequence of a sentence, particularly one subject to a lengthy parole disqualifier and consecutive terms).

The sentence is hereby vacated. DCPP records shall be reviewed by the judge, redacted, and made available to defendant before any new sentence date. The resentence hearing shall be conducted by a different judge.

Reversed.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION